# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

————————

XUE LU and JIE HAO,

*Plaintiffs-Appellees / Cross-Appellants*,

v.

UNITED STATES OF AMERICA,

*Defendant-Appellant / Cross-Appellee.*

————————

On Appeal from the United States District Court
for the Central District of California

————————

## PRINCIPAL BRIEF FOR THE UNITED STATES

————————

CHAD A. READLER
  *Acting Assistant Attorney General*

SANDRA R. BROWN
  *Acting United States Attorney*

CHARLES W. SCARBOROUGH
KAREN SCHOEN
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7533*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue N.W.*
  *Washington, D.C. 20530*
  *(202) 514-3159*
  *karen.a.schoen@usdoj.gov*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................ iii

INTRODUCTION ....................................................................... 1

STATEMENT OF JURISDICTION ............................................. 4

STATEMENT OF THE ISSUES ................................................. 4

PERTINENT STATUTES ............................................................ 5

STATEMENT OF THE CASE ..................................................... 5

      A.    Statutory Background .................................................. 6

      B.    Factual and Procedural Background ................................ 10

           1.    Facts Underlying Plaintiffs' Lawsuit ......................... 10

           2.    The First Appeal ..................................................... 12

           3.    Proceedings on Remand ........................................... 13

           4.    The Second Appeal .................................................. 15

           5.    Redetermination of Fee Award and Award of
                 Additional Fees for Appeal ...................................... 18

SUMMARY OF ARGUMENT .................................................... 21

STANDARD OF REVIEW .......................................................... 25

ARGUMENT ............................................................................ 26

I.    The District Court Erred in Awarding Attorney's Fees
     Solely on the Basis of Prelitigation Conduct and in
     Awarding Fees That Would Have Been Incurred Even in
     the Absence of Bad Faith ............................................ 26

      A.    The District Court Improperly Based At Least Some
            Portion of the Fee Award on Prelitigation Conduct
            Unrelated to the Conduct of the Litigation Itself ........ 26

B.    The District Court Failed to Make the Necessary
Finding That the Fees Awarded Would Not Have
Been Incurred "But For" the Bad Faith .................................. 35

II.   The District Court Erred in Awarding Attorney's Fees for
the Prior Appeal and the Post-Remand Fee Proceedings ............. 40

A.    The Findings of Bad Faith at the Trial Level Do Not
Justify an Award of Fees on Appeal or for the Fee
Proceedings Post-Remand ........................................................ 41

B.    The District Court Abused Its Discretion in Excusing
the Untimeliness of Plaintiffs' Motion for Fees on
Appeal ........................................................................................ 47

CONCLUSION ........................................................................................ 51

STATEMENT OF RELATED CASES

CERTIFICATES OF COMPLIANCE AND SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**

*Arulampalam v. Gonzales,*
   399 F.3d 1087 (9th Cir. 2005) ....................................20, 48, 49

*Association of Flight Attendants v.*
*Horizon Air Indus., Inc.,*
   976 F.2d 541 (9th Cir. 1992) ....................................27, 28, 31

*Barry v. Bowen,*
   825 F.2d 1324 (9th Cir. 1987) ......................................8, 25

*Blixseth v. Yellowstone Mountain Club, LLC,*
   854 F.3d 626 (9th Cir. 2017) ....................................42, 43, 44

*Brown v. Sullivan,*
   916 F.2d 492 (9th Cir. 1990) ....................................8, 9, 44

*Burrell v. Henderson,*
   434 F.3d 826 (6th Cir. 2006) ...........................................50

*Callow v. Amerace Corp.,*
   681 F.2d 1242 (9th Cir. 1982) ..........................................43

*Cazares v. Barber,*
   959 F.2d 753 (9th Cir. 1992) ...........................................33

*Chambers v. NASCO, Inc.,*
   501 U.S. 32 (1991) ....................................8, 9, 26, 27, 29, 31

*Commissioner, INS v. Jean,*
   496 U.S. 154 (1990) ....................................6, 7, 33, 42, 46

*Cooter & Gell v. Hartmarx Corp.,*
   496 U.S. 384 (1990) ....................................42, 43, 46

*Fox v. Vice,*
   563 U.S. 826 (2011) ....................................10, 36, 40

iii

*Goodyear Tire & Rubber Co. v. Haeger*,
137 S. Ct. 1178 (2017) ................................... 2, 10, 23, 36, 37, 38, 40, 43

*Havrum v. United States*,
204 F.3d 815 (8th Cir. 2000) ................................................................. 31

*Huddleston v. Herman & MacLean*,
640 F.2d 534 (5th Cir. Unit A Mar. 1981),
*rev'd in part on other grounds*, 459 U.S. 375 (1983) ........................... 30

*In re Southern Cal. Sunbelt Developers, Inc.*,
608 F.3d 456 (9th Cir. 2010) ................................................. 9, 42, 43, 44

*Joe v. United States*,
772 F.2d 1535 (11th Cir. 1985) (per curiam)......................................... 7

*Kerin v. U.S. Postal Serv.*,
218 F.3d 185 (2d Cir. 2000)................................................................... 27

*Lockary v. Kayfetz*,
974 F.2d 1166 (9th Cir. 1992) ........................................... 42, 43, 44, 45

*Lyddon v. Geothermal Props., Inc.*,
996 F.2d 212 (9th Cir. 1993) ......................................................... 44, 46

*Margolis v. Ryan*,
140 F.3d 850 (9th Cir. 1998) ............................................................... 43

*Natural Res. Def. Council, Inc. v. Winter*,
543 F.3d 1152 (9th Cir. 2008) ....................................................... 25, 46

*Pincay v. Andrews*,
389 F.3d 853 (9th Cir. 2004) (en banc) ............................................... 48

*Pioneer Inv. Servs. Co. v.*
*Brunswick Assocs. Ltd. P'ship*,
507 U.S. 380 (1993) ................................................................. 24–25, 47

*Pumphrey v. K.W. Thompson Tool Co.*,
62 F.3d 1128 (9th Cir. 1995) ............................................................... 44

*Rawlings v. Heckler,*
  725 F.2d 1192 (9th Cir. 1984) ........................................... 33, 34

*Rodriguez v. United States,*
  542 F.3d 704 (9th Cir. 2008) ............................. 22, 27, 33–34

*Sanchez v. Rowe,*
  870 F.2d 291 (5th Cir. 1989) ................................................. 28

*Shimman v. International Union of*
  *Operating Eng'rs, Local 18,*
  744 F.2d 1226 (6th Cir. 1984) (en banc) ......................... 28, 29

*Straub v. Vaisman & Co.,*
  540 F.2d 591 (3d Cir. 1976) ................................................. 30

*Xue Lu v. Powell,*
  621 F.3d 944 (9th Cir. 2010) .......................................... 12–13

*Xue Lu v. United States,*
  638 F. App'x 614 (9th Cir. 2016) .................. 16–18, 24, 31–32, 45, 48

## Statutes:

Equal Access to Justice Act (EAJA):

  28 U.S.C. § 2412(b) ....................................................... 8, 26
  28 U.S.C. § 2412(d)(1)(A) ............................................. 3, 6, 7
  28 U.S.C. § 2412(d)(1)(B) ................................................... 19
  28 U.S.C. § 2412(d)(2)(A) ..................................................... 6
  28 U.S.C. § 2412(d)(2)(D) ................................................... 33

Federal Tort Claims Act (FTCA):

  28 U.S.C. § 1346(b)(1) .......................................................... 4
  28 U.S.C. § 2674 ...................................... 3, 9, 22, 29, 32
  28 U.S.C. § 2678 .............................................................. 2, 7
  28 U.S.C. § 2680(h) ........................................................... 13

28 U.S.C. § 1291 ................................................................. 4

**Rules:**

Fed. R. App. P. 4(a)(3) ................................................................ 4

Fed. R. App. P. 40(a)(1) ............................................................ 48

9th Cir. R. 39-1.6(a) ..................................................... 19, 46, 48

**Legislative Materials:**

H.R. Rep. No. 96-1418 (1980) ................................................... 7

S. Rep. No. 96-253 (1979) ..................................................... 6, 7

**Other Authorities:**

Gregory C. Sisk, *The Essentials of the Equal Access to Justice Act: Court Awards of Attorney's Fees for Unreasonable Government Conduct (Part One)*, 55 La. L. Rev. 217 (1994) ...................................... 7

## INTRODUCTION

In this Federal Tort Claims Act (FTCA) case, the district court awarded $991,402.50 in attorney's fees under subsection (b) of the Equal Access to Justice Act (EAJA), which codifies the "bad faith" exception to the American rule and makes it applicable in litigation against the United States. In a prior appeal, this Court reversed one of the district court's four findings of bad-faith conduct by the government, vacated the original fee award, and remanded for reconsideration of the award in light of the reversal of the bad-faith finding. This Court did not suggest that the government had acted in bad faith in taking that appeal. Nonetheless, on remand, the district court not only found that virtually all the fees incurred by plaintiffs before the appeal were "traceable" to bad-faith conduct by the government, but also awarded the fees incurred on appeal and in the fee proceedings on remand. Thus, rather than simply reducing its original fee award of $881,675.75 in light of this Court's reversal of one of the bad-faith findings, the district court ended up *increasing* the total fee award to $991,402.50.

The district court's fee award violates fundamental limits on judicial authority to award attorney's fees for bad-faith conduct by the

United States. The award contravenes the fundamental principle, recognized in *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178 (2017), that bad-faith fee awards are strong medicine available solely to compensate for *specific* misconduct and may not be extended to cover all phases of a case absent specific findings that the fees would not have been incurred "but for" the bad-faith conduct. While the district court purported to "trace" the fees awarded to its bad-faith findings, the court improperly awarded fees that would have been incurred even in the absence of any bad-faith conduct.

Moreover, the award flouts the distinction between "bad faith" fee awards under EAJA subsection (b) and fee awards under EAJA subsection (d), a fee-shifting provision that allows an eligible prevailing party to obtain fees unless the court finds that the government's position was "substantially justified." Fee awards under EAJA subsection (d) are intended to reduce the economic deterrents to contesting governmental action, and generally encompass all phases of a case. But because attorney's fees are typically paid from a plaintiff's damages award in FTCA cases, *see* 28 U.S.C. § 2678 (permitting attorney's fees up to 25% of judgment), EAJA subsection (d) specifically

excludes from its scope "cases sounding in tort," 28 U.S.C. § 2412(d)(1)(A). In awarding fees for virtually all the work plaintiffs' counsel performed in this case, the district court effectively allowed plaintiffs to make an end-run around the exclusion of tort cases from EAJA subsection (d) and the norm that attorney's fees typically come from tort judgments in FTCA cases.

Even apart from these errors, the district court also improperly based a portion of the fee award solely on prelitigation conduct that neither necessitated this litigation nor related to the conduct of the litigation. Not only did the court violate the basic principle that conduct unrelated to the process of litigation may not form the sole basis of a bad-faith fee award, but in doing so, the court effectively awarded punitive damages, which the FTCA forbids, *see* 28 U.S.C. § 2674.

In light of these errors, this Court should vacate the fee award and remand for the district court to determine which fees plaintiffs incurred "solely because of" the government's bad-faith litigation conduct.

# STATEMENT OF JURISDICTION

Plaintiffs invoked the jurisdiction of the district court under 28 U.S.C. § 1346(b)(1). On November 10, 2016, on remand from an appeal of the final judgment, the district court entered an order awarding attorney's fees. The government timely filed a notice of appeal on January 9, 2017. *See* ER 13–15. Plaintiffs timely filed a notice of cross-appeal pursuant to Federal Rule of Appellate Procedure 4(a)(3) on January 23, 2017. *See* ER 11–12. This Court has jurisdiction over both appeals under 28 U.S.C. § 1291.

# STATEMENT OF THE ISSUES

1. Whether the district court erred (a) in awarding attorney's fees solely on the basis of prelitigation bad-faith conduct that neither necessitated this litigation nor related to the conduct of the litigation, and (b) in awarding fees that would have been incurred even in the absence of any bad-faith conduct.

2. Whether the district court erred (a) in awarding additional attorney's fees for work performed in the prior appeal and in the fee proceedings on remand where there was no finding by either the district court or this Court that the government acted in bad faith on appeal or

on remand, and (b) in excusing plaintiffs' untimely motion for fees on appeal.

## PERTINENT STATUTES

Pertinent statutes are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

Plaintiffs, two female Chinese nationals, brought this suit under the Federal Tort Claims Act (FTCA) in February 2001. They sought to hold the United States vicariously liable for the conduct of an asylum officer who solicited sexual favors and money from them in exchange for promises to grant their asylum applications. Plaintiffs obtained judgments against the United States totaling $1.2 million, which have been fully paid. The only remaining issues concern the district court's award of an additional $991,402.50 in attorney's fees under the Equal Access to Justice Act (EAJA) on the basis of three findings of bad-faith conduct by the government.[1]

---

[1] The district court appears to have made a computational error in stating that it was awarding total fees of $993,758. *See* ER 10.

## A.    Statutory Background

Under the "American rule," litigants ordinarily must bear their own attorney's fees. EAJA, however, provides for an award of attorney's fees against the United States in certain limited circumstances. The provision most commonly invoked to obtain fees in civil litigation involving the government is EAJA subsection (d), a "fee-shifting statute[]," *Commissioner, INS v. Jean*, 496 U.S. 154, 161 (1990), that allows an eligible prevailing party to obtain fees and expenses "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust," 28 U.S.C. § 2412(d)(1)(A).

Congress enacted subsection (d) to reduce the "economic deterrents to contesting governmental action." S. Rep. No. 96-253, at 1 (1979). The rates for any fee award under this subsection are subject to a statutory cap of $125 per hour "unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). Generally, under subsection (d), "only one threshold determination [of fee eligibility] . . . is to be made,"

*Jean*, 496 U.S. at 159, and "a fee award presumptively encompasses all aspects of the civil action," *id.* at 161.

Subsection (d), however, specifically excludes from its scope "cases sounding in tort." 28 U.S.C. § 2412(d)(1)(A). Tort cases were excluded because "the bill's sponsors considered the legal remedies adequate and equitable in those cases." H.R. Rep. No. 96-1418, at 18 (1980); *see also* S. Rep. No. 96-253, at 20 (same). In other words, the exclusion reflects Congress's judgment that the contingency-fee agreements plaintiffs' counsel typically have with their clients in tort cases are "adequate to ensure that injured persons [can] obtain legal representation to seek redress for torts committed by government employees or entities." Gregory C. Sisk, *The Essentials of the Equal Access to Justice Act: Court Awards of Attorney's Fees for Unreasonable Government Conduct (Part One)*, 55 La. L. Rev. 217, 246 (1994). Indeed, the FTCA expressly authorizes the payment of fees from a plaintiff's damages award, up to a maximum of 25% of any such award, *see* 28 U.S.C. § 2678, and the legislative history of § 2678 suggests that "Congress viewed FTCA claims as typically involving contingent fee arrangements," *Joe v. United States*, 772 F.2d 1535, 1537 (11th Cir. 1985) (per curiam).

Although subsection (d) excludes tort cases, a separate subsection of EAJA—subsection (b)—independently authorizes attorney's fee awards in tort (and other) cases in some narrow circumstances. EAJA subsection (b) permits a court to award reasonable attorney's fees and expenses to the prevailing party "in any civil action" and makes the United States "liable for such fees and expenses to the same extent that any other party would be liable under the common law." 28 U.S.C. § 2412(b).

Under the common law, courts have "inherent power" to award attorney's fees against a party that has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991) (internal quotation marks omitted). EAJA subsection (b) "codified" this "bad faith" exception to the American rule and "made [it] applicable in suits against the United States." *Barry v. Bowen*, 825 F.2d 1324, 1334 (9th Cir. 1987). This exception, however, "is a narrow one," and an award of fees under it "can be imposed only in exceptional cases and for dominating reasons of justice." *Brown v. Sullivan*, 916 F.2d 492, 495 (9th Cir. 1990) (internal quotation marks omitted). Whereas fee awards under EAJA subsection (d) are capped at

a statutory rate, courts may award fees at market rates under subsection (b), *see id.*

Unlike EAJA subsection (d), subsection (b) is not a fee-shifting provision. Bad-faith fee awards issued under a court's inherent power do not "turn[] on the merits of the litigation as a whole," and "shift[] the costs of only a 'discrete' portion of the litigation." *In re Southern Cal. Sunbelt Developers, Inc.*, 608 F.3d 456, 462 (9th Cir. 2010).

Nor are bad-faith fee awards meant to constitute punitive damages, which the FTCA expressly prohibits. *See* 28 U.S.C. § 2674. While the "underlying rationale" for bad-faith fee awards is "punitive," *Chambers*, 501 U.S. at 53 (internal quotation marks omitted), unlike punitive damages, bad-faith fee awards are not based on "a party's success on the underlying claim," but on "conduct during the litigation," *id.* at 54.

"The award of attorney's fees for bad faith serves the same purpose as a remedial fine imposed for civil contempt": it "vindicates the District Court's authority over a recalcitrant litigant" and compensates a party for the consequences of another party's bad faith. *Chambers*, 501 U.S. at 53–54 (internal quotation marks and brackets omitted). The

Supreme Court has emphasized the compensatory nature of bad-faith fee awards. As the Court recently explained in *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178 (2017), a bad-faith fee award "may go no further than to redress the wronged party for losses sustained; it may not impose an additional amount as punishment for the sanctioned party's misbehavior." *Id.* at 1186 (internal quotation marks omitted). "[I]f an award extends further than that—to fees that would have been incurred without the misconduct"—the Court explained, "it crosses the boundary from compensation to punishment," and requires the "procedural guarantees applicable in criminal cases." *Id.* Thus, the Court summarized, a court may award "'only the portion of [a party's] fees that he would not have paid *but for*' the misconduct." *Id.* at 1187 (quoting *Fox v. Vice*, 563 U.S. 826, 836 (2011)) (emphasis added).

## B. Factual and Procedural Background

### 1. Facts Underlying Plaintiffs' Lawsuit

Plaintiff Xue Lu applied for political asylum in the United States and in February 2000 was interviewed by Thomas Powell, an asylum officer, in the presence of her immigration attorney. Powell later called Lu to arrange a private meeting at her home. At that meeting, Powell

kissed and groped her, and attempted to extort sexual favors in exchange for his help in granting her asylum application, but Lu rejected his advances. Lu's asylum application was later denied. *See* ER 211–212 ¶¶ 12–17.

Plaintiff Jie Hao also applied for political asylum and was represented by the same immigration attorney who represented Lu. Because Lu had informed her attorney of Powell's conduct, the attorney advised Hao to let him know if Powell tried to arrange a private meeting with her. Accordingly, when Powell contacted her to arrange a private meeting, Hao told her attorney, and he in turn informed the Department of Justice about Powell's improper conduct. *See* ER 213–214 ¶¶ 27–32.

Hao agreed to participate in a sting operation, and met with Powell at her home. Powell told her that he would grant her asylum application in exchange for $2,000. He also slapped her buttocks multiple times in a sexual manner, and kissed her cheeks as he left. *See* ER 214–215 ¶¶ 35–37. A few days later, Powell called Hao to arrange another meeting at her home. Federal agents gave Hao $2,000, which she gave to Powell at their next meeting. During that meeting, Powell

touched Hao on her knee, asked for a hug, and kissed her cheeks. *See* ER 215 ¶¶ 39–42. Federal agents arrested Powell, and he was later convicted of deprivation of civil rights under color of law in violation of 18 U.S.C. § 242 and solicitation of bribes in violation of 18 U.S.C. § 201(b)(2)(A). *See* ER 210 ¶ 7.

Powell had not taken any action on Hao's asylum application before his arrest, and the INS took no further action on her application during the pendency of Powell's criminal trial. Hao received a new asylum interview in 2005 and was ultimately granted asylum in 2007 (roughly seven years after the incident with Powell). *See* ER 216 ¶¶ 44, 50.

## 2.   The First Appeal

The district court initially dismissed plaintiffs' FTCA claims against the United States, holding that Powell was not acting within the scope of his employment under California law. On appeal, however, this Court reversed in relevant part and held that Powell had acted within the scope of his employment. *See Xue Lu v. Powell*, 621 F.3d 944, 947–49 (9th Cir. 2010). The Court identified two viable tort claims asserted by plaintiffs: (1) a common-law claim of intentional infliction of

emotional distress and (2) a state statutory claim of interference with civil rights through threats, intimidation, or coercion. *Id.* at 949–50. The Court acknowledged that "[t]he United States is immune from liability for an assault or battery by its employee" under 28 U.S.C. § 2680(h) (the intentional-torts exception to the FTCA), but concluded that "[t]he emotional distress suffered as a result of the demand for sexual favors is an injury distinct from the battery and may be proved by the plaintiffs." *Id.* at 950.

### 3. Proceedings on Remand

On remand, the district court conducted a bench trial and ruled in favor of plaintiffs, awarding total damages of $1.2 million. The court rejected the government's argument that the intentional-torts exception to the FTCA, 28 U.S.C. § 2680(h), barred plaintiffs' claims. The government argued that the damages plaintiffs sought were in fact based on Powell's assault and battery—his kissing and inappropriate touching of plaintiffs. The district court, however, disagreed, finding that the conduct that "actual[ly] and proximate[ly] cause[d]" plaintiffs' emotional distress was "not limited to claims of offensive touching" but

"also include[d]" the improper solicitations. ER 219 ¶ 67 (internal quotation marks omitted).

The district court likewise rejected the government's argument that Hao could not recover damages for any injury resulting from Powell's solicitation because the solicitation occurred during the sting operation that Hao agreed to participate in. The government explained that the very purpose of the sting operation was to catch Powell in the act of soliciting money or sexual favors from Hao in exchange for granting her asylum application. Hao's consent to participate in the sting operation, the government argued, thus necessarily included consent to being the target of an improper solicitation—and barred her from recovering damages for any injury caused by that solicitation. The district court rejected this argument, finding that "Hao did not consent to be subjected to the sexual touching, hugging, kissing, anxiety, and depression that ultimately resulted." ER 191.

On plaintiffs' motion, the district court also awarded attorney's fees under EAJA subsection (b), which permits an award of fees against the United States for work that would not have been necessary but for the government's bad-faith litigation conduct. The court identified four

instances of bad-faith conduct, including two arguments advanced during the litigation and two actions that occurred before the litigation began: (1) the government's argument that Hao's consent to participate in the sting operation barred her from recovering damages for any injury resulting from Powell's solicitation; (2) the government's argument that the intentional-torts exception to the FTCA barred plaintiffs' claims; (3) the failure of federal agents to come to Hao's aid after Powell slapped her buttocks during the sting operation; and (4) the government's delay in processing Hao's asylum claim until after Powell's criminal trial ended. *See* ER 189–191. The district court declared that the government's bad faith "affected all portions or phases of the litigation" since the date of the sting operation and awarded a total of $881,675.75 in attorney's fees. ER 191, 201.

### 4.    The Second Appeal

The government appealed both the district court's judgment in favor of plaintiffs on the merits and the attorney's fee award. This Court affirmed the damages award in full. The Court rejected the government's arguments (1) that Hao's consent to participate in the sting operation barred any recovery for injuries resulting from Powell's

solicitation, and (2) that the district court had awarded damages on the basis of Powell's battery, thereby violating limitations set forth in the intentional-torts exception and the Court's prior decision. *See Xue Lu v. United States*, 638 F. App'x 614, 616–18 (9th Cir. 2016) (unpublished).

With respect to the fee award, the government argued on appeal (1) that none of the conduct cited by the district court constituted bad faith and (2) that the district court improperly based a portion of the award on prelitigation conduct that had no effect on the conduct of the litigation. The Court affirmed in part and reversed in part.

The Court reversed the district court's finding that the government had acted in bad faith by arguing that the intentional-torts exception barred plaintiffs' claims. The Court explained that the government had "provided a non-frivolous way to reconcile the argument with [the Court's] previous decision" and had properly invoked the argument to "counter [p]laintiffs' claim that they could recover for the totality of Powell's conduct because his battery had been part and parcel of a 'viable' tort." *Xue Lu*, 638 F. App'x at 618.

But with respect to the government's consent argument, the Court agreed with the district court that, "to the extent [the argument]

included consent to battery, [it] was 'meritless and offensive.'" *Xue Lu*, 638 F. App'x at 618. Accordingly, the Court held that the district court's finding of bad faith was not clearly erroneous. The Court made clear, however, that the consent argument "does not compel a finding of bad faith." *Id.*

The Court likewise upheld the district court's finding that federal agents acted in bad faith when they failed to intervene in the sting operation. But, again, the Court noted that it "might well have come to a different conclusion on de novo review." *Xue Lu*, 638 F. App'x at 619. And the Court upheld the finding of bad faith based on the delay of Hao's asylum application (except with respect to the final two years of the delay). *See id.* at 619 & n.2.

While the Court noted that "court[s] may consider the government's prelitigation actions in assessing bad faith," *Xue Lu*, 638 F. App'x at 618, the Court did not address the government's argument that these two instances of prelitigation conduct had no bearing on the litigation itself and thus could not provide a proper basis for a fee award. Instead, because the Court had reversed one of the bad-faith findings and could not determine from the record whether the district

17

court would have made the same fee award absent that finding, the Court simply vacated the attorney's fee award and remanded for consideration of "what, if any, changes should be made to the award." *Id.* at 619. The Court also awarded costs to plaintiffs. *See id.* But the Court did not find, or in any way suggest, that the government had acted in bad faith in appealing either the judgment on the merits or the attorney's fee award.

### 5. Redetermination of Fee Award and Award of Additional Fees for Appeal

On remand, plaintiffs argued that the findings of bad faith upheld by this Court supported the district court's original fee award and that no modification of the award was necessary. They further argued that the court could "look to the bad faith conduct of Powell . . . in making its determination of what attorneys' fees are traceable to the bad faith of the government" and that such bad faith further justified the original fee award. Pls.' Mem. of P. & A. re Att'ys' Fees at 16–17, dkt. no. 336 (Apr. 29, 2016). The district court explained, however, that because it had not addressed Powell's conduct in determining the original fee award and because this Court had not addressed it, the conduct was "irrelevant for purposes of [re]determining fees." ER 4 n.7.

The government renewed its argument that the prelitigation bad-faith conduct the district court had identified could not, standing alone, provide a proper basis for a fee award. Specifically, the government argued that, given this Court's reversal of the district court's finding of bad faith predicated on the intentional-torts argument, the only remaining instance of bad-faith litigation conduct was the government's consent argument. And because that argument was first raised in 2011, the government argued, any fee award had to be limited to attorney's fees incurred after that date in responding to that argument.

The district court did not specifically address these arguments. Instead, the court merely stated, without further explanation, that "[t]he evidence submitted by [p]laintiffs demonstrates $676,751.00 in fees expended in the underlying action is traceable to one or more of the three findings of bad faith by the Government." ER 4.

Although plaintiffs had not sought attorney's fees in this Court at the conclusion of the appeal, plaintiffs filed a motion for fees incurred on appeal in the district court. They filed their motion within the time provided under EAJA subsection (d), 28 U.S.C. § 2412(d)(1)(B), rather than the shorter time provided by Ninth Circuit Rule 39-1.6(a): 14 days

after the expiration of the period within which a petition for rehearing may be filed, *see Arulampalam v. Gonzales*, 399 F.3d 1087, 1090–91 (9th Cir. 2005). (Unlike EAJA subsection (d), subsection (b) does not itself prescribe a time for seeking fees; one must look to the applicable local rule.) The government argued that plaintiffs' request for fees on appeal should be denied both because it was untimely and because the government did not act in bad faith on appeal.

In their reply, plaintiffs argued that, to the extent their motion for fees on appeal was untimely, that was the product of "excusable neglect." Dkt. no. 344, at 2. Plaintiffs attached a declaration asserting that "the deadline to file is unclear and counsel made a good faith mistake in calculating the deadline." ER 176. The government sought leave to file a sur-reply to rebut plaintiffs' assertion and sought to submit evidence suggesting that plaintiffs were aware of the applicable time limits, including a 2013 e-mail from plaintiffs' counsel in which they cited the correct filing deadline in seeking an extension to file their original fee motion.

The district court denied the government's motion, but allowed the government to present its argument at a hearing on the fee motion. *See*

ER 157:23–160:11. Nonetheless, in evaluating the totality of the circumstances surrounding plaintiffs' untimely filing, the court did not appear to consider the evidence proffered by the government. Instead, after finding that plaintiffs' motion was untimely, the court simply held that this was a result of "excusable neglect," and awarded an additional $314,651.50 in attorney's fees for work on appeal and on remand. *See* ER 8–10.

## SUMMARY OF ARGUMENT

The district court's attorney's fee award violates fundamental limits on judicial authority to award fees for bad-faith conduct. This Court should therefore vacate the fee award in its entirety and remand with instructions for the district court to determine which fees plaintiffs incurred "solely because of" the government's consent argument—the only remaining instance of litigation misconduct upon which a fee award may properly be based.

**I. A.** The district court erred in awarding attorney's fees solely on the basis of prelitigation conduct unrelated to conduct in the litigation. As this Court has emphasized, "an award of attorney's fees is not appropriate when it is based *solely* upon a finding of bad faith in the

conduct underlying the lawsuit." *Rodriguez v. United States*, 542 F.3d 704, 712 (9th Cir. 2008) (internal quotation marks omitted). The record makes clear, however, that a substantial portion of the fee award in this case was based solely on prelitigation conduct, since the government did not make the consent argument—the only litigation conduct found to be in bad faith—until 2011. The court's award of fees for any work performed before that date is thus based solely on findings of bad faith unrelated to the conduct of the litigation: the failure to come to Hao's aid during the sting operation and the delay in processing her asylum application.

To the extent the fee award was based solely on prelitigation misconduct without any nexus to bad-faith litigation conduct, the award does nothing to vindicate judicial authority. It is effectively an award of punitive damages that not only exceeds the district court's inherent power, but also violates the FTCA's bar on punitive damages, *see* 28 U.S.C. § 2674.

**B.** Even apart from the district court's error in basing a portion of the fee award solely on prelitigation conduct, the court also failed to limit the award to fees incurred "solely because of the misconduct."

*Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1184 (2017).

The Supreme Court recently made clear that a bad-faith fee award is "limited to the fees . . . [a] party would not have incurred but for the bad faith." *Id.* While the district court summarily stated that the $676,751 in fees awarded were "traceable to one or more of the three findings of bad faith," ER 4, nothing in the court's opinion suggests that the court applied a but-for causation standard. On the contrary, the declaration and billing records submitted by plaintiffs' counsel in support of their fee request show that counsel would have performed much of the same work even in the absence of the bad-faith conduct. The district court failed to adequately examine plaintiffs' blanket assertions that virtually all the work performed after May 2011, when the government first raised the consent argument, was traceable to that argument, and completely failed to make the necessary finding that plaintiffs' fees were incurred "solely because of" that argument.

**II.** The district court also erred in awarding attorney's fees incurred in the prior appeal and in the fee proceedings on remand.

**A.** No basis exists for an award of bad-faith attorney's fees for work in the prior appeal and the resulting remand, because there was

no finding of bad faith in either of those phases of the case. Although this Court largely ruled against the government in the prior appeal, there is no indication that the panel believed that the government had acted in bad faith in taking that appeal or in advancing any specific arguments in that appeal. Indeed, while the Court upheld three of the district court's bad-faith findings as not clearly erroneous, the Court noted with respect to the government's consent argument that a bad-faith finding was not "compel[led]." *Xue Lu v. United States*, 638 F. App'x 614, 618 (9th Cir. 2016) (unpublished). And with respect to the government's failure to intervene during the sting operation, this Court noted that it "might well have come to a different conclusion on de novo review," *id.* at 619. Absent any finding by this Court or the district court that the government acted in bad faith in taking the appeal or in the fee proceedings on remand, there was no basis for the district court to award additional bad-faith attorney's fees for those phases of the case.

**B.** Moreover, although this Court need not reach the issue, the district court abused its discretion in finding that plaintiffs' untimely motion for fees on appeal was the result of excusable neglect, because the court failed to "tak[e] account of all relevant circumstances." *Pioneer*

*Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395

(1993). The government proffered evidence to rebut plaintiffs' assertion

that "counsel made a good faith mistake in calculating the deadline,"

ER 176, but the court failed to consider this evidence and thus violated

its obligation to consider the totality of the circumstances in evaluating

plaintiffs' claim of excusable neglect.

## STANDARD OF REVIEW

Generally, this Court reviews attorney's fee awards for abuse of

discretion. *See Natural Res. Def. Council, Inc. v. Winter*, 543 F.3d 1152,

1157 (9th Cir. 2008). But the proper interpretation of EAJA and other

legal issues that "figure in the district court's decision" are reviewed *de

novo. Id.* (internal quotation marks omitted); *see also Barry v. Bowen*,

825 F.2d 1324, 1331 (9th Cir. 1987).

# ARGUMENT

## I. The District Court Erred in Awarding Attorney's Fees Solely on the Basis of Prelitigation Conduct and in Awarding Fees That Would Have Been Incurred Even in the Absence of Bad Faith

### A. The District Court Improperly Based At Least Some Portion of the Fee Award on Prelitigation Conduct Unrelated to the Conduct of the Litigation Itself

**1.** EAJA subsection (b), 28 U.S.C. § 2412(b), codifies the bad-faith exception to the American rule and permits a court to award attorney's fees against the United States where the government has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991) (internal quotation marks omitted). A fee award under this exception is "a matter of . . . vindicating judicial authority." *Id.* at 55. It is "not a matter of substantive remedy," *id.*, or a tool to punish the underlying misconduct giving rise to a party's claim. Accordingly, in awarding attorney's fees courts have drawn a sharp distinction between prelitigation conduct upon which a suit is based and litigation conduct. As Justice Kennedy explained in his dissenting opinion in *Chambers*, "[w]hen a federal court, through invocation of its inherent powers, sanctions a party for bad-faith prelitigation conduct, it goes well beyond the exception to the

26

American Rule and violates the Rule's careful balance between open access to the federal court system and penalties for the willful abuse of it." *Id.* at 74.

In light of these principles, this Court has made clear that "an award of attorney's fees is not appropriate when it is 'based *solely* upon a finding of bad faith in the conduct underlying the lawsuit.'" *Rodriguez v. United States*, 542 F.3d 704, 712 (9th Cir. 2008) (quoting *Association of Flight Attendants v. Horizon Air Indus., Inc.*, 976 F.2d 541, 550 (9th Cir. 1992)); *see also, e.g.*, *Kerin v. U.S. Postal Serv.*, 218 F.3d 185, 195 (2d Cir. 2000) ("It is uncontroversial that business conduct that is entirely unrelated to the process of litigation may not form the sole basis of a bad faith fee award."). While this Court has "recognized a possibility that prelitigation conduct might be relevant to an award of fees for bad faith conduct *during the litigation*," *Rodriguez*, 542 F.3d at 712 (emphasis added) (internal quotation marks omitted), the Court has expressly "decline[d] to adopt" reasoning that would allow fees to be awarded for "bad faith conduct underlying the cause of action," *Association of Flight Attendants*, 976 F.2d at 549 n.9.

Like other courts of appeals, this Court has distinguished between "a defendant's bad faith in necessitating that an action be filed," which may provide the basis for a fee award, and "a defendant's bad faith in the acts giving rise to the claim," which may not. *Association of Flight Attendants*, 976 F.2d at 549 n.9 (quoting *Shimman v. International Union of Operating Eng'rs, Local 18*, 744 F.2d 1226, 1230 (6th Cir. 1984) (en banc)). The former type of prelitigation conduct occurs when, for example, a defendant "maintain[s] a frivolous defense in bad faith, forcing [the] plaintiff to go to court." *Shimman*, 744 F.2d at 1230 n.6. In other words, a fee award may be based only on "bad-faith conduct related to the litigation," whether that conduct occurs "in response to a claim before a suit has been filed or in the course of the litigation after a suit has been filed." *Sanchez v. Rowe*, 870 F.2d 291, 294 (5th Cir. 1989). A fee award "may not be based on a party's conduct *forming the basi*s for that substantive claim." *Id.* at 295.

An award of attorney's fees based on "bad faith in the act underlying the substantive claim" is inconsistent "with the rationale behind the American Rule." *Shimman*, 744 F.2d at 1231. That rule recognizes that "[a] person who harms another in bad faith is

28

nonetheless entitled to defend a lawsuit in good faith." *Id.* at 1232. The rule protects "the right to go to court and litigate a non-frivolous . . . defense" by precluding an award of attorney's fees when a defendant's "judgment concerning the merits of his position turns out to be in error" even though the injured party "is not made completely whole because of the cost of litigation." *Id.* at 1231.

Moreover, to the extent a fee award is based solely on prelitigation conduct unrelated to the conduct of the litigation, it is effectively an award of punitive damages. Although the underlying rationale of bad-faith fee awards is punitive, what distinguishes such awards from punitive damages is that the former seek to vindicate judicial authority and punish litigation misconduct. As the Supreme Court explained in *Chambers*, the fee award in that case did not violate Louisiana's prohibition on punitive damages, because the "sanctions were imposed for conduct during the litigation." 501 U.S. at 54. *Chambers* thus makes clear that regardless of whether they are within a court's inherent power, sanctions imposed solely for bad-faith conduct unrelated to litigation conduct may be precluded by statutory prohibitions on punitive damages, *e.g.*, 28 U.S.C. § 2674 (FTCA punitive-damages bar).

Indeed, as the Fifth Circuit explained long ago, bad-faith conduct inherent in fraudulent acts giving rise to a cause of action under Rule 10b-5 "cannot be the basis for an attorney's fees award," because the Securities Exchange Act of 1934 prohibits punitive damages in a Rule 10b-5 action. *Huddleston v. Herman & MacLean*, 640 F.2d 534, 559–60 (5th Cir. Unit A Mar. 1981), *rev'd in part on other grounds*, 459 U.S. 375 (1983); *see also Straub v. Vaisman & Co.*, 540 F.2d 591, 599–600 (3d Cir. 1976) (same).

In sum, bad-faith attorney's fee awards are distinct from punitive damages and are permissible only to the extent they seek to vindicate judicial authority and punish litigation misconduct.

**2.** The district court's fee award violates these basic legal principles. The timing of the relevant conduct makes clear that a substantial portion of the fee award was based solely on prelitigation conduct unrelated to the conduct of the litigation. It is undisputed that the government did not make the consent argument—the only instance of litigation misconduct upheld by this Court in the prior appeal—until 2011. The district court's award of fees for any work performed before that date is thus based solely on the two instances of prelitigation bad-

faith conduct identified by the district court: the failure to come to Hao's aid during the sting operation and the delay in processing Hao's asylum application. Neither instance of prelitigation bad-faith conduct, however, "necessitat[ed] that [plaintiffs'] action be filed," *Association of Flight Attendants*, 976 F.2d at 549 n.9 (internal quotation marks omitted), or "prove[d] to be a measurable impediment to the progress of [plaintiffs'] lawsuit," *Havrum v. United States*, 204 F.3d 815, 819 (8th Cir. 2000).

The portion of the fee award for work performed before May 2011 was based solely on prelitigation conduct and is therefore an impermissible award of "damages for a violation of a legal norm." *Chambers*, 501 U.S. at 74 (Kennedy, J., dissenting). The award does nothing to "vindicate the District Court's authority over a recalcitrant litigant," *id.* at 53 (majority opinion) (alteration and internal quotation marks omitted), and thus exceeds the district court's inherent authority. The district court's fee award effectively punished the government for underlying misconduct that provided at least part of the basis for Hao's emotional-distress claim and the damages awarded to her. *See Xue Lu v. United States*, 638 F. App'x 614, 617 (9th Cir. 2016)

(unpublished) (affirming damages award based in part on delay in processing Hao's asylum claim). Such an award thus not only exceeds the district court's inherent power but also violates 28 U.S.C. § 2674, the provision of the FTCA prohibiting awards of punitive damages against the United States.

It makes no difference that the district court also identified some bad-faith litigation conduct (the consent argument) to support its attorney's fee award. The mere identification of some litigation misconduct does not provide a hook to sweep in any and all instances of prelitigation misconduct. There must still be some connection between the bad-faith litigation conduct identified and the bad-faith prelitigation conduct, and that critical link is missing in this case. Indeed, there can be no doubt that if this Court had reversed *both* of the district court's findings of bad-faith litigation conduct (*i.e.*, both the intentional-torts argument and the consent argument), the two findings of prelitigation bad-faith conduct that remained would not have been sufficient to support any fee award in this case, because such an award would plainly have been "based *solely* upon a finding of bad faith in the

conduct underlying the lawsuit." *Rodriguez*, 542 F.3d at 712 (internal

quotation marks omitted).

In making its original fee award, the district court relied on

*Rodriguez* for the proposition that "district courts should consider the

'totality of the circumstances,' including conduct 'prelitigation and

during trial,' when making bad faith determinations." ER 189 (quoting

*Rodriguez*, 542 F.3d at 712).[2] But the district court misunderstood that

decision. The plaintiffs in *Rodriguez* sued the United States following

an attempt by federal immigration officers to execute, at the plaintiffs'

home, an administrative warrant for the arrest and removal of an

individual who did not live there. The district court found that various

defenses raised by the government constituted "bad faith" and awarded

---

[2] The "totality of circumstances" language quoted in *Rodriguez* originally came from *Rawlings v. Heckler*, which involved an attorney's fee award under EAJA subsection (d). *See Rodriguez*, 542 F.3d at 712 (quoting *Cazares v. Barber*, 959 F.2d 753, 755 (9th Cir. 1992), which in turn quoted *Rawlings v. Heckler*, 725 F.2d 1192, 1196 (9th Cir. 1984)). The inquiry under subsection (b), however, differs markedly from the inquiry under subsection (d), which requires a determination whether the government's position *as a whole* was substantially justified. *See Commissioner, INS v. Jean*, 496 U.S. 154, 159–62 (1990); *see also* 28 U.S.C. § 2412(d)(2)(D) (defining the "position of the United States" to "mean[], in addition to the position taken . . . in the civil action, the action or failure to act by the agency upon which the civil action is based").

attorney's fees on the basis of such bad-faith *litigation* conduct as well as bad-faith prelitigation conduct. *See* 542 F.3d at 707–09.

The prelitigation conduct found to constitute bad faith in *Rodriguez* was the conduct underlying the lawsuit, including an "unreasonably perfunctory" records search to find an address for the individual named in the arrest warrant. *Rodriguez*, 542 F.3d at 712. That conduct was relevant to the determination that there was bad-faith *litigation* conduct sufficient to justify a fee award: the prelitigation conduct informed the district court's assessment of the reasonableness of one of the primary arguments the government made in the litigation, namely, that the officers' conduct was "privileged" because they had a reasonable suspicion that they would find the individual at the plaintiffs' home. Thus, *Rodriguez* merely recognizes the settled rule that where the underlying conduct is completely indefensible on any grounds, an effort to "defend the indefensible" might form the basis for a bad-faith finding. *Cf. Rawlings v. Heckler*, 725 F.2d 1192, 1195 (9th Cir. 1984) ("Courtroom attempts to defend unreasonable agency actions usually will be unreasonable also."). *Rodriguez* provides no support for the extraordinary proposition that a court may base an award of

attorney's fees on underlying bad-faith conduct that did not give rise to the litigation and was in no way related to bad-faith litigation conduct.

In short, the district court failed to recognize that there must be a connection between the prelitigation conduct and bad-faith litigation conduct. The court made no attempt to connect the two instances of prelitigation bad-faith conduct here (the failure to come to Hao's aid during the sting operation and the delay in processing her asylum application) to the one remaining instance of bad-faith litigation conduct (the consent argument). Nor could the district court have done so. The court's global finding that "$676,751.00 in fees expended in the underlying action is traceable to one or more of the three findings of bad faith by the Government," ER 4, simply is not adequate to establish that the attorney's fees were incurred because of bad-faith conduct that provides an appropriate basis for a fee award.

## B. The District Court Failed to Make the Necessary Finding That the Fees Awarded Would Not Have Been Incurred "But For" the Bad Faith

Even apart from the district court's error in basing a portion of the fee award solely on prelitigation conduct, the district court failed to apply the proper causation standard in redetermining the award.

In *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178 (2017), the Supreme Court made clear that a "but for" causation standard applies to an award of attorney's fees for bad-faith conduct—that is, a court may award "'only the portion of [a party's] fees that he would not have paid but for' the misconduct." *Id.* at 1187 (quoting *Fox v. Vice*, 563 U.S. 826, 836 (2011)). To the extent a party would have incurred certain fees even in the absence of the bad-faith conduct, the Court explained, "he has suffered no incremental harm" from the bad faith and "the court lacks a basis for shifting" those fees. *Id.* (quoting *Fox*, 563 U.S. at 836). Accordingly, "[a] sanctioning court must determine which fees were incurred because of, and solely because of, the misconduct at issue." *Id.* at 1189.

The district court failed to make that determination here. While the court purported to apply a causation standard and found that the $676,751 in fees awarded were "traceable to one or more of the three findings of bad faith," ER 4, nothing in the court's opinion suggests that the court applied a but-for causation standard. On the contrary, the declaration submitted by plaintiffs' counsel in support of their fee

request suggests that counsel would have performed much of the same work even in the absence of the bad-faith conduct.

For example, because none of the three instances of bad faith upheld by this Court related in any way to Lu, work performed on her behalf necessarily would have been performed even in the absence of the bad-faith conduct and had to be subtracted from the fee award.[3] But as plaintiffs' counsel explained, "[m]uch of the work in this case on behalf of . . . Jie Hao and Xue Lu overlapped," and counsel subtracted from their fee request only work that was "performed *solely* on behalf of Xue Lu." ER 20 ¶ 8 (emphasis added). By plaintiffs' own admission, work that was performed on behalf of both plaintiffs was included in plaintiffs' fee request. Because none of the three instances of bad faith related in any way to Lu, however, such work could not have been performed "solely because of" the bad-faith conduct, *Goodyear*, 137 S. Ct. at 1189.

---

[3] Although one of the four findings of bad faith that formed the basis for the district court's original fee award (the intentional-torts argument) related to both plaintiffs, this Court reversed that finding as clearly erroneous. The three remaining instances of bad faith (the failure to come to Hao's aid during the sting operation, the delay in processing Hao's asylum application, and the consent argument) all related solely to Hao.

Likewise, while plaintiffs' counsel attributed nearly all the work they performed after May 2011, when the government first made its consent argument, to the consent argument, *see, e.g.*, ER 42–53, 59–63, 83–85 (assigning all three "codes" for the three instances of bad-faith conduct to most of the time reported after May 2011), nothing in their declaration suggests that the consent argument was a "but-for cause" of such work, *Goodyear*, 137 S. Ct. at 1189. And there is good reason to doubt that it was. During this time, for example, the government continued to argue that the intentional-torts exception barred plaintiffs' claims. At a minimum, some of the work reported by counsel after May 2011 would have been necessary to address the intentional-torts argument and thus would have been performed regardless of the bad-faith conduct. Moreover, there were countless other arguments and issues in this case, making it implausible that anything more than a small fraction of the fees incurred were solely attributable to the consent argument. *See, e.g.*, Gov't's Opening Br. re Redetermination of Fee Award at 15, dkt. no. 335 (Apr. 29, 2016) (noting that the government's motion for summary judgment "asserted three separate

and distinct arguments"); *id.* at 12–23 (estimating percentage of litigation activity that addressed consent argument).

Further, the declaration reveals that fees plaintiffs attributed to the government's failure to come to Hao's aid during the sting operation would have been incurred even in the absence of such conduct. As discussed, *see supra* section I.A, the failure to intervene was not a proper basis for the fee award in any event, because it was prelitigation conduct unrelated to conduct in the litigation. But even apart from that, the declaration shows that in seeking fees for the failure to intervene, plaintiffs were effectively seeking fees incurred in addressing the government's arguments that Powell was acting outside the scope of his employment and that the intentional-torts exception barred plaintiffs' claims—neither of which constituted bad faith. *See* ER 19–20 ¶ 5 (explaining that "work performed is traceable" to "[t]he failure to intervene" because "Powell's assaultive conduct, to which the United States did not intervene, is the very same conduct [the government] relied on to argue that the conduct was outside the scope of employment [and] that the intentional tort [exception] provided a bar to any compensation"). Because plaintiffs would have had to address the

government's intentional-tort and scope-of-employment arguments even in the absence of the bad-faith conduct identified by the district court, the court "lack[ed] a basis for shifting the expense" of dealing with those arguments. *Goodyear*, 137 S. Ct. at 1187.

The district court failed to address any of these issues and uncritically accepted plaintiffs' calculations without adequate scrutiny. The court appeared to believe that it could award attorney's fees "for any work useful to defending against [the bad-faith conduct], even if [plaintiffs' counsel] would have done that work regardless." *Fox*, 563 U.S. at 840. As *Goodyear* has now made clear, however, the district court's casual approach to causation is not acceptable.

## II. The District Court Erred in Awarding Attorney's Fees for the Prior Appeal and the Post-Remand Fee Proceedings

The district court's award of attorney's fees incurred in the prior appeal and on remand is flawed in at least two ways. As an initial matter, there was no proper basis for an award of bad-faith attorney's fees for work in those proceedings, because the government did not act in bad faith in either of those phases of the case. In any event, the district court abused its discretion in finding that plaintiffs' untimely

motion for fees on appeal was the result of "excusable neglect," because the court did not examine the totality of the circumstances related to that filing.

> **A.** **The Findings of Bad Faith at the Trial Level Do Not Justify an Award of Fees on Appeal or for the Fee Proceedings Post-Remand**

The district court erred in awarding attorney's fees for work in the prior appeal and in the fee proceedings on remand because the government did not act in bad faith in either of those phases of the litigation. Nothing in this Court's prior opinion suggests that the panel believed that the government had acted in bad faith on appeal, much less that the district court should consider awarding fees for the appeal. On the contrary, this Court remanded for the limited purpose of allowing the district court to modify its prior fee award given the reversal of one of its findings of bad faith. Moreover, on remand the district court made no specific finding that the government had acted in bad faith on appeal or in the proceedings to redetermine the fee award; instead, the court simply relied on the prior bad-faith findings, concluding that "$314,651.50 in fees expended on the second appeal and

post-remand is traceable to one or more of the three findings of bad faith by the Government." ER 9.

The district court failed to appreciate the critical distinction between a court's inherent power to impose sanctions for bad-faith conduct by a litigant and "fee-shifting provisions." *Blixseth v. Yellowstone Mountain Club, LLC*, 854 F.3d 626, 629 (9th Cir. 2017); *see also In re Southern Cal. Sunbelt Developers, Inc.*, 608 F.3d 456, 461–67 (9th Cir. 2010). Under fee-shifting statutes such as EAJA subsection (d), "only one threshold determination [of fee eligibility] . . . is to be made," *Commissioner, INS v. Jean*, 496 U.S. 154, 159 (1990), and "a fee award presumptively encompasses all aspects of the civil action," *id.* at 161. By contrast, a bad-faith fee award issued under a court's inherent power does not "turn[] on the merits of the litigation as a whole" and shift[s] the costs of only a 'discrete' portion of the litigation." *Sunbelt*, 608 F.3d at 462.

As this Court has recognized, "expenses incurred 'because of' a baseless filing" or other bad-faith conduct do not "extend indefinitely" throughout the litigation. *Lockary v. Kayfetz*, 974 F.2d 1166, 1178 (9th Cir. 1992) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 406

(1990)). Only the "'direct' costs" of dealing with a party's bad faith, such as "the costs of opposing [an] offending pleading or motion," may properly be included in a bad-faith fee award. *Id.*; *cf. Goodyear*, 137 S. Ct. at 1189 (holding that a court may award only those fees incurred "solely because of" the misconduct).

The Supreme Court has held that expenses incurred in defending a fee award on appeal are "directly caused" by the district court's sanction and the appeal of that sanction, not by the original bad-faith conduct of the sanctioned party. *Cooter & Gell*, 496 U.S. at 407, 409 (holding that Federal Rule of Civil Procedure 11, which "is not a fee-shifting statute," did not authorize award of attorney's fees incurred on appeal of a Rule 11 sanction).[4] Under that same reasoning, fees on appeal under EAJA subsection (b) are warranted only where there was independent bad faith on appeal. *See Callow v. Amerace Corp.*, 681 F.2d 1242 (9th Cir. 1982) (concluding that district court did not abuse its

---

[4] Although "[t]he December 1, 1993, post–*Cooter & Gell* amendment to Rule 11 specifically allows a district court to include the expenses associated with sanctions proceedings," *Blixseth*, 854 F.3d at 630 n.4 (citing *Margolis v. Ryan*, 140 F.3d 850, 854–55 (9th Cir. 1998)), this Court has recognized that the Supreme Court's reasoning in *Cooter & Gell* continues to apply to sanctions imposed under a court's inherent authority, *see id.* at 630; *Sunbelt*, 608 F.3d at 466–67 & n.6.

discretion in awarding bad-faith fees at the trial level, but denying fees on appeal because arguments on appeal were not frivolous); *cf. Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1128, 1130, 1134 (9th Cir. 1995) (declining to award fees on appeal because defendant's arguments on appeal were not presented in bad faith, but agreeing with district court that defendant's actions at the trial level constituted fraud on the court and upholding district court's decision to order a new trial).

Likewise, fees incurred in preparing or supporting a request for attorney's fees may not be included in a bad-faith fee award in the absence of bad faith in litigating the fee request. *See Blixseth*, 854 F.3d at 630; *Sunbelt*, 608 F.3d at 466–67; *Lockary*, 974 F.2d at 1178; *cf. Lyddon v. Geothermal Props., Inc.*, 996 F.2d 212, 214 (9th Cir. 1993) (holding that fees awarded under Federal Rule of Appellate Procedure 38 may not include fees incurred in computing amount of award).[5]

---

[5] The district court relied on this Court's statement in *Brown v. Sullivan*, 916 F.2d 492, 497 (9th Cir. 1990), that a court "may award attorney fees at market rates for the entire course of litigation, including time spent preparing, defending, and appealing the two awards of attorney fees, if it finds that the fees incurred during the various phases of litigation are in some way traceable to the [government's] bad faith." The Court in *Brown*, however, cited *Jean*, which involved EAJA subsection (d)—a fee-shifting statute—and did

*Continued on next page.*

Here, there was no finding of bad faith either on appeal or in the fee proceedings post-remand that would justify the district court's award of attorney's fees. Although this Court largely ruled against the government in the prior appeal, there is no indication that the panel believed that the government had acted in bad faith in taking that appeal or in advancing any specific arguments in that appeal. Indeed, while the Court upheld three of the district court's bad-faith findings as not clearly erroneous, the Court made clear that the government's consent argument "does not compel a finding of bad faith." *Xue Lu*, 638 F. App'x at 618. And the Court noted with respect to the failure of federal agents to come to Hao's aid during the sting operation that the court "might well have come to a different conclusion on de novo review." *Id.* at 619. Moreover, although the Court awarded costs to plaintiffs, the Court did not suggest that it would be receptive to a motion for attorney's fees on appeal—even though the availability of fees was plainly a significant part of the prior appeal.

---

not even mention *Cooter & Gell*, which this Court later relied on in *Lockary*, 974 F.2d at 1177–78, to hold that bad-faith fee awards under a court's inherent power may not include fees incurred in preparing or supporting a request for attorney's fees.

Perhaps for these reasons, plaintiffs elected to file their motion for fees on appeal in district court rather than in this Court. But regardless of whether this approach was permissible, EAJA subsection (b) cannot be read to permit the "anomalous result" of allowing the district court to award attorney's fees for work on appeal "even when the appeal would not be sanctioned" by this Court. *Cooter & Gell*, 496 U.S. at 407.[6] This Court was in the best position to decide whether the government acted in bad faith on appeal, and any determination the district court may have made on that score is not entitled to any deference. *Cf. Lyddon*, 996 F.2d at 213 (reviewing district court's *calculation* of Rule 38 sanctions for abuse of discretion but only after determining *entitlement* to sanctions in the first instance). Because the government did not act

---

[6] It is unclear whether plaintiffs' election to file their request in district court was permissible. Although a request for fees on appeal generally must be filed in this Court, *see* 9th Cir. R. 39-1.6, the Court has recognized an exception to this rule for fee requests under EAJA subsection (d). *See Natural Res. Def. Council, Inc. v. Winter*, 543 F.3d 1152, 1164 (9th Cir. 2008). Nonetheless, the inquiry under subsection (d) differs from that under subsection (b). Under EAJA subsection (d), a court must determine whether the government's position *as a whole* was substantially justified, *see Jean*, 496 U.S. at 159–62, a determination district courts are generally well suited to make. But they are not well suited to determine whether the government acted in bad faith on appeal, which is the determination required under EAJA subsection (b).

in bad faith in either the prior appeal or the post-remand fee proceedings, this Court should vacate the district court's award of an additional $314,651.50 in attorney's fees for work performed in those phases of the litigation.

## B. The District Court Abused Its Discretion in Excusing the Untimeliness of Plaintiffs' Motion for Fees on Appeal

Because there was no proper basis for an award of bad-faith attorney's fees for work in the prior appeal and the fee proceedings on remand, *see supra* section II.A, this Court need not reach the question whether the district court properly excused the untimeliness of plaintiffs' motion for fees on appeal. In any event, the district court erred in evaluating whether plaintiffs demonstrated excusable neglect. In determining whether a party's delay in filing was the result of "excusable neglect," a court must "tak[e] account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). This Court has held that in evaluating the totality of circumstances surrounding an untimely filing, courts should examine various factors (referred to as the *Pioneer* factors), including (1) "the danger of

prejudice to the non-moving party"; (2) "the length of delay and its potential impact on judicial proceedings"; (3) "the reason for the delay"; and (4) "whether the moving party's conduct was in good faith." *Pincay v. Andrews*, 389 F.3d 853, 855 (9th Cir. 2004) (en banc).

In this case, the district court found that plaintiffs' motion for fees on appeal was untimely, but then held that their late motion was the result of "excusable neglect." ER 8.[7] Although the court correctly cited the four *Pioneer* factors, the court did not properly apply those factors, because it did not examine the totality of the circumstances related to plaintiffs' untimely motion.

Despite their prior experience filing motions for attorney's fees in this case and ample notice that EAJA subsection (d) does not apply to tort cases, *see Xue Lu*, 638 F. App'x at 619 n.3, plaintiffs filed their motion for attorney's fees incurred on appeal within the time provided in 28 U.S.C. § 2412(d)(1)(B) rather than the shorter time provided by

---

[7] The district court correctly held that plaintiffs' motion was untimely but misstated the applicable deadline. Plaintiffs had only 59 days from the issuance of this Court's judgment, or until March 26, 2016 (not May 10, 2016, as the district court stated). *See* 9th Cir. R. 39-1.6(a); Fed. R. App. P. 40(a)(1); *see also Arulampalam v. Gonzales*, 399 F.3d 1087, 1090–91 (9th Cir. 2005).

Ninth Circuit Rule 39-1.6(a), which applied to their motion for fees under EAJA subsection (b). *See Arulampalam v. Gonzales*, 399 F.3d 1087, 1090–91 (9th Cir. 2005). Plaintiffs argued that there was good cause to excuse their untimely motion because "the deadline to file is unclear and counsel made a good faith mistake in calculating the deadline." ER 176. Because plaintiffs raised this "excusable neglect" argument for the first time in their reply brief, the government sought leave to file a sur-reply attaching evidence to rebut plaintiffs' assertion that they were unaware of the applicable time limits, including a 2013 e-mail from plaintiffs' counsel in which they cited the correct filing deadline in seeking an extension to file their original fee request, *see* ER 206.

The district court denied the government's motion, and it does not appear that the court ever considered the evidence proffered by the government concerning counsel's knowledge of the correct deadline. Although the government argued at a hearing on the fee motion that plaintiffs were aware of the correct deadline, *see* ER 159:10–160:11, the court did not address this argument (or the evidence the government sought to offer) in its decision. Thus, although the district court

identified the correct standard for determining excusable neglect and purported to apply the four *Pioneer* factors, the court abused its discretion by ignoring evidence that was plainly relevant to the question of excusable neglect. By failing to determine whether plaintiffs' claim that they misinterpreted the law could be reconciled with their citation to the correct filing deadline at a prior stage of the proceedings, the district court violated its obligation to consider the totality of the circumstances in evaluating claims of excusable neglect. *See Burrell v. Henderson*, 434 F.3d 826, 831 (6th Cir. 2006) ("A clear example of abuse of discretion occurs where the district court fails to consider relevant facts upon which the exercise of its discretionary judgment is based." (internal quotation marks omitted)).

## CONCLUSION

For the foregoing reasons, this Court should vacate the fee award and remand for a determination of the fees incurred in the underlying litigation "solely because of" the single instance of bad-faith litigation conduct identified by the district court.

Respectfully submitted,

CHAD A. READLER
 *Acting Assistant Attorney*
 *General*

SANDRA R. BROWN
 *Acting United States Attorney*

CHARLES W. SCARBOROUGH

 /s/ Karen Schoen
KAREN SCHOEN
 *Attorneys, Appellate Staff*
 *Civil Division, Room 7533*
 *U.S. Department of Justice*
 *950 Pennsylvania Avenue N.W.*
 *Washington, D.C. 20530*
 *(202) 514-3159*
 *karen.a.schoen@usdoj.gov*

AUGUST 2017

# STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, the government certifies

that it knows of no related case pending in this Court.


/s/ Karen Schoen
Karen Schoen

## CERTIFICATE OF COMPLIANCE WITH
## FEDERAL RULE OF APPELLATE PROCEDURE 32(a)

I hereby certify that this brief complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Century Schoolbook, a proportionally spaced font.

I further certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 10,267 words, excluding the parts of the brief exempted under Rule 32(f), according to the count of Microsoft Word.

/s/ Karen Schoen

Karen Schoen

## CERTIFICATE OF SERVICE

I hereby certify that on August 9, 2017, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

/s/ Karen Schoen
Karen Schoen

**ADDENDUM**

# TABLE OF CONTENTS

28 U.S.C. § 2412....................................................................A1

28 U.S.C. § 2674....................................................................A4

28 U.S.C. § 2678....................................................................A4

## 28 U.S.C. § 2412

### § 2412. Costs and fees

(a)(1) Except as otherwise specifically provided by statute, a judgment for costs, as enumerated in section 1920 of this title, but not including the fees and expenses of attorneys, may be awarded to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. A judgment for costs when taxed against the United States shall, in an amount established by statute, court rule, or order, be limited to reimbursing in whole or in part the prevailing party for the costs incurred by such party in the litigation.

\* \* \* \*

(b) Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

\* \* \* \*

(d)(1)(A) Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

(B) A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is

a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed. The party shall also allege that the position of the United States was not substantially justified. Whether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought.

(C) The court, in its discretion, may reduce the amount to be awarded pursuant to this subsection, or deny an award, to the extent that the prevailing party during the course of the proceedings engaged in conduct which unduly and unreasonably protracted the final resolution of the matter in controversy.

(D) If, in a civil action brought by the United States or a proceeding for judicial review of an adversary adjudication described in section 504(a)(4) of title 5, the demand by the United States is substantially in excess of the judgment finally obtained by the United States and is unreasonable when compared with such judgment, under the facts and circumstances of the case, the court shall award to the party the fees and other expenses related to defending against the excessive demand, unless the party has committed a willful violation of law or otherwise acted in bad faith, or special circumstances make an award unjust. Fees and expenses awarded under this subparagraph shall be paid only as a consequence of appropriations provided in advance.

(2) For the purposes of this subsection—

(A) "fees and other expenses" includes the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees (The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that (i) no expert witness shall be compensated at a rate in excess of the highest rate of compensation

for expert witnesses paid by the United States; and (ii) attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.);

(B) "party" means (i) an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed, or (ii) any owner of an unincorporated business, or any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed; except that an organization described in section 501(c)(3) of the Internal Revenue Code of 1986 (26 U.S.C. 501(c)(3)) exempt from taxation under section 501(a) of such Code, or a cooperative association as defined in section 15(a) of the Agricultural Marketing Act (12 U.S.C. 1141j(a)), may be a party regardless of the net worth of such organization or cooperative association or for purposes of subsection (d)(1)(D), a small entity as defined in section 601 of title 5;

(C) "United States" includes any agency and any official of the United States acting in his or her official capacity;

(D) "position of the United States" means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based; except that fees and expenses may not be awarded to a party for any portion of the litigation in which the party has unreasonably protracted the proceedings;

\* \* \* \*

(f) If the United States appeals an award of costs or fees and other expenses made against the United States under this section and the award is affirmed in whole or in part, interest shall be paid on the amount of the award as affirmed. Such interest shall be computed at the rate determined under section 1961(a) of this title, and shall run from the date of the award through the day before the date of the mandate of affirmance.

## 28 U.S.C. § 2674

### § 2674. Liability of United States

The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

*   *   *   *

With respect to any claim under this chapter, the United States shall be entitled to assert any defense based upon judicial or legislative immunity which otherwise would have been available to the employee of the United States whose act or omission gave rise to the claim, as well as any other defenses to which the United States is entitled.

*   *   *   *

## 28 U.S.C. § 2678

### § 2678. Attorney fees; penalty

No attorney shall charge, demand, receive, or collect for services rendered, fees in excess of 25 per centum of any judgment rendered pursuant to section 1346(b) of this title or any settlement made pursuant to section 2677 of this title, or in excess of 20 per centum of any award, compromise, or settlement made pursuant to section 2672 of this title.

Any attorney who charges, demands, receives, or collects for services rendered in connection with such claim any amount in excess of that allowed under this section, if recovery be had, shall be fined not more than $2,000 or imprisoned not more than one year, or both.