Case No.: 17-55040 and 17-55087

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

XUE LU and JIE HAO,
*Plaintiffs-Appellees/Cross-Appellants,*

vs.

UNITED STATE OF AMERICA,
*Defendant-Appellant/Cross Appellee.*

## PLAINTIFFS-APPELLEES/CROSS-APPELLANTS' ANSWERING
## BRIEF AND OPENING BRIEF ON CROSS APPEAL

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT
OF CALIFORNIA
HONORABLE CONSUELO B. MARSHALL
CASE NO. 2:01-cv-01758-CBM-EX

---

Michael D. Seplow
Colleen M. Mullen
mseplow@sshhlaw.com
cmullen@sshhlaw.com
SCHONBRUN SEPLOW
HARRIS & HOFFMAN LLP
11543 West Olympic Blvd.
Los Angeles, CA 90064
Telephone: (310) 396-0731

V. James DeSimone
vjdesimone@gmail.com
V. JAMES DESIMONE LAW
13160 Mindanao Way, Suite 280
Marina Del Rey, CA 90292
Telephone: (310) 626-1487

Douglas Grant Ingraham
dgimuse@yahoo.com
LAW OFFICES OF
DOUGLAS G. INGRAHAM
171 Pier Avenue, #497
Santa Monica, CA 90405
Telephone: (310) 663-1956

*Attorneys for Plaintiffs-Appellees/Cross-Appellants*

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................ 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW .......................... 6

STATEMENT OF JURISDICTION ......................................................... 7

STATEMENT OF THE CASE ................................................................. 8

  I.  STATEMENT OF THE FACTS ........................................................ 8

    A.  Facts Related to Xue Lu .................................................................. 8

    B.  Facts Related to Jie Hao .................................................................. 9

  II.  PROCEDURAL HISTORY ............................................................ 11

    A.  After Winning an Appeal, Plaintiffs Prevailed at Trial When the District Court Found that Defendant was liable for violation of Civil Code § 52.1 and IIED ........................................................... 25

    B.  The District Court Found Defendant Acted in Bad Faith and Awarded Attorneys' Fees Under the EAJA .................................... 13

    C.  The Ninth Circuit Affirmed Three of the Four of the District Court's Findings of Bad Faith in Second Appeal and Remanded with Instructions to Decide What, If Any, Changes to Make in the Fee Award. ...................................................................................... 14

    D.  On Remand, the District Court Followed the Ninth Circuit's Holding ........................................................................................... 16

STANDARD OF REVIEW ..................................................................... 20

SUMMARY OF THE ARGUMENT ....................................................... 21

  I.  IN RESPONSE TO APPELLANT'S PRINCIPLE BRIEF ................ 21

   A.  Fees Awarded in the Underlying Action ......................................... 25

   B.  Fees Awarded for the Second Appeal and Subsequent Remand..... 25

  II.  ON CROSS-APPEAL ......................................................................... 26

ARGUMENT IN RESPONSE TO DEFENDANT'S PRINCIPAL
BRIEF ....................................................................................................... 28

   I.   THE DISTRICT COURT PROPERLY FOLLOWED THE
      NINTH CIRCUIT'S DIRECTIVE ON REMAND WHEN IT
      RECALCULATED THE FEE AWARD. .......................................... 28

    A.  The Law of the Case Doctrine Precludes Re-Examination of
       This Court's Previous Fees Ruling.. ................................................ 28

    B.  Goodyear Does Not Apply to Fee Awards Granted Pursuant to
       § 28 U.S.C. 2412(b) and Does Not Change the Federal Common
       Law With Respect to Prelitigation Bad Faith. ................................ 34

    C.  The District Court Properly Awarded Fees for All Work
       Traceable to Defendant's Bad Faith. .............................................. 43

ARGUMENT IN SUPPORT OF PLAINTIFFS' CROSS APPEAL ........... 54

   A.  Powell's Repeated Attempts to Extort Plaintiffs for Money and
      Sexual Favors While Acting in the Course and Scope of
      Employment Constitutes Bad Faith, Which Supports an Award of
      Attorneys' Fees. .............................................................................. 54

   B.  Plaintiffs Are Entitled to Attorneys' Fees for the Entirety of the
      Litigation........................................................................................... 57

CONCLUSION........................................................................................... 58

# TABLE OF AUTHORITIES

## Federal Cases

*Alexander v. F.B.I.*,
  541 F. Supp. 2d 274 (D.D.C. 2008) ........................................................... 38

*Ass'n of Flight Attendants v. Horizon Air Indus.*,
  976 F.2d 451 (9th Cir. 1992) .................................................................... 27

*Brown v. Sullivan*,
  916 F.2d 492 (9th Cir. 1990) ............................................................. Passim

*Callow v. Amerace Corp.*,
  681 F.2d 1242 (9th Cir. 1982) ................................................................... 53

*Cazares v. Barber*,
  959 F.2d 753 (9th Cir. 1992) ........................................................ 39, 55, 57

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991) ............................................................................. Passim

*Comm'r, I.N.S. v. Jean*,
  496 U.S. 154 (1990) .................................................................................. 52

*Filarsky v. Delia*,
  566 U.S. 377 (2012) .................................................................................. 39

*Fox v. Vice*,
  563 U.S. 826 (2011) ............................................................... 24, 43, 49, 58

*Gate Guard Servs., L.P. v. Perez*,
  792 F.3d 554 (5th Cir. 2015) .................................................................... 57

*Gonzalez v. Arizona*,
  677 F.3d 383 (9th Cir. 2012) ............................................................... 29, 30

*Goodyear Tire & Rubber Company v. Haeger*,
  137 S. Ct. 1178 (2017) ...................................................................... Passim

# TABLE OF AUTHORITIES

## Federal Cases Continued

*Hall v. Cole*,
412 U.S. 1 (1973) ................................................................. 39, 40

*Hensley v. Eckerhart*,
461 U.S. 424, (1983) .................................................... 43, 44, 58

*Jeffries v. Wood*,
114 F.3d 1484 (9th Cir. 1997) ............................................. 29, 30

*Kerin v. U.S. Postal Serv.*,
218 F.3d 185 (2d Cir. 2000) ..................................................... 40

*Lauritzen v. Lehman*,
736 F.2d 550 (9th Cir. 1984) ..................................................... 27

*Lear Siegler, Inc., Energy Prod. Div. v. Lehman*,
842 F.2d 1102 (9th Cir. 1988),
*opinion withdrawn in part on reh'g*, 893 F.2d 205 (9th Cir. 1989)........... 40

*Maritime Mgmt., Inc. v. United States*,
242 F.3d 1326 (11th Cir. 2001) ................................................. 37

*McQuiston v. Marsh*,
707 F.2d 1082 (9th Cir. 1983) ................................................... 41

*Miller v. Gammie*,
335 F.3d 889 (9th Cir. 2003) ..................................................... 30

*Pincay v. Andrews*,
389 F.3d 853 (9th Cir. 2004) ............................................... 20, 50

*Pioneer Inv. Servs. Co. v. Brunswick Associates Ltd. P'ship*,
507 U.S. 380 (1993) ...................................................... 19, 25, 50

*Rawlings v. Heckler*,
725 F.2d 1192 (9th Cir. 1984) ........................................ 33, 49, 57

# TABLE OF AUTHORITIES

## Federal Cases Continued

*Ridgeway v. Montana High School Ass'n,*
  858 F.2d 579 (9th Cir. 1988) ....................................................................... 29

*Roadway Express, Inc. v. Piper,*
  447 U.S. 752 (1980) ................................................................................. 36

*Rodriguez v. United States,*
  542 F.3d 704 (9th Cir. 2008) ............................................................... Passim

*Sanchez v. Rowe,*
  870 F.2d 291 (5th Cir. 1989) ..................................................................... 41

*Shimman v. Int'l Union of Operating Engineers, Local 18,*
  744 F.2d 1226 (6th Cir. 1984) ................................................................... 41

*United States v. Hinkson,*
  585 F.3d 1247 (9th Cir. 2009) ................................................................... 20

*United States v. Jingles,*
  702 F.3d 494 (9th Cir. 2012) ............................................................... 29, 30

*United States v. U.S. Smelting Refining & Mining Co.,*
  339 U.S. 186 (1950) ............................................................................ 23, 29

*Waggoner v. Dallaire,*
  767 F.2d 589 (9th Cir. 1985) ..................................................................... 29

*Xue Lu v. Powell,*
  621 F.3d 944 (9th Cir. 2010) ......................................................... 11, 12, 13

*Xue Lu v. United States,*
  638 Fed. App'x 614 (9th Cir. 2016) ...................................................... Passim

# TABLE OF AUTHORITIES

## Federal Statutes

18 U.S.C. § 201(B)(2)(A) ............................................................................... 11

18 U.S.C. § 242 ................................................................................................ 11

28 U.S.C. § 1291 ................................................................................................. 7

28 U.S.C. § 1927 .............................................................................................. 35

28 U.S.C. § 2412(b) ................................................................................... Passim

28 U.S.C § 2412(d)(1)(a) ............................................................................ 24, 38

## Federal Rules

Fed. R. of App. P. 38 ...................................................................................... 53

Federal Rule of Civil Procedure 11 ............................................................... 35

Fed. R. of App. P. 4(a)(3) ................................................................................. 7

## Other Sources

Cal. Prac. Guide Fed. 9th Cir. Civ. App. Prac. Ch. 12-C ............................. 52

**INTRODUCTION**

The Government's appeal is nothing more than a blatant request for a "do over" of this Court's 2016 opinion affirming the existence of three specific acts of bad-faith conduct by the Government, exposing Defendant to liability for attorneys' fees under the Equal Access to Justice Act ("EAJA"). *See Xue Lu v. United States*, 638 Fed. App'x 614, 618-19 (9th Cir. 2016). In its prior opinion, this Court held that Plaintiffs could be awarded attorneys' fees where such fees were attributable to the Defendant's acts of bad faith, including prelitigation conduct, and directed the district court to reconsider its fee award under applicable Ninth Circuit precedent. *See id.* at 618 (directing district court to "'consider what, *if any*, modification of the fee award is appropriate in light of this opinion.'") (quoting *Rodriguez v. United States*, 542 F.3d 704, 715 (9th Cir. 2008)) (emphasis added). Despite the fact that the district court strictly adhered to this Court's directive on remand and only awarded fees that it found were attributable to the specific instances of bad faith affirmed by this Court, Defendant now asks this Court to completely disregard its 2016 opinion and argues that attorneys' fees cannot be based on the Government's prelitigation bad faith. Defendant's barefaced attack on this Court's prior opinion should be rejected outright.

Plaintiffs Xue Lu and Xie Hao, Chinese nationals, were victims of outrageous criminal conduct perpetrated by Thomas Powell, who violated

1

Plaintiffs' rights when he attempted to extort bribes and sexual favors in exchange for favorable rulings on their asylum applications, while acting in the course and scope of his employment as a federal INS official. Even though Plaintiffs helped the Government bring Powell to justice in the criminal prosecution by testifying at the criminal trial, the Government has repeatedly acted in bad faith, both prior to and during the ensuing civil litigation.

After losing at trial and being found liable for $1,200,000 in damages, in addition to over $880,000 in attorneys' fees under the EAJA, the Government appealed both the finding of liability and the award of attorneys' fees. This Court completely rejected Defendant's appeal as to liability, and affirmed three out of four of the district court's findings of bad faith with regard to the fee award, remanding the case for the district court to reconsider its prior fee award and make whatever adjustments, "if any," the district court deemed necessary.

Upon remand, the district court carefully considered the parties' extensive briefing, declarations, and arguments, and subsequently issued a revised fee order *which reduced the original fee award to Plaintiffs by over $200,000*. The district court's revised fee award adhered strictly to this Court's 2016 ruling, applying the Ninth Circuit's decision in *Rodriguez*, by only awarding fees that could be specifically traced to the Government's bad faith. Accordingly, the Government's argument in this appeal that Plaintiffs are not entitled to any fees attributable to the

Government's prelitigation bad-faith conduct is foreclosed by the law of the case doctrine, as such argument is directly contrary to this Court's prior holding.

In its prior decision, this Court described as "meritless and offensive" the Government's argument, asserted throughout this lengthy litigation, that Plaintiff Hao consented to being abused by Powell. *Xue Lu*, 638 Fed. App'x at 618-19. In addition, this Court also affirmed that the Government's bad-faith conduct included "showing a blatant disregard for Hao's well-being" by failing to come to her aid during the sting operation against Powell in June 2000 and "unnecessarily extend[ing] Hao's separation from her husband and young son by five extra years." *Id.* Nonetheless, Defendant entirely ignores these other instances of bad faith, which the Ninth Circuit has already found give rise to attorneys' fees prior to 2011, and argues that Plaintiffs are only entitled to fees attributable to litigation activities since 2011 related to the consent argument. The law of the case doctrine precludes re-examination of this Court' prior findings of bad faith as well as its holding that such bad faith can support Plaintiffs' award of attorneys' fees.

Similarly, the district court's award of attorneys' fees for work performed during the second appeal should be affirmed. In that appeal, the Government pursued arguments which the district court found (and the Ninth Circuit affirmed) had been made in bad faith. As such, the district court was entirely justified in awarding fees for work that was unmistakably caused by Defendant's bad faith.

Likewise, the district court's findings that Plaintiffs' untimely motion for attorneys' fees was the result of excusable neglect should not be disturbed. The district court considered all the evidence presented by counsel and properly applied the applicable standard to allow Plaintiffs' motion to be decided on the merits. The district court's award of attorneys' fees should be affirmed in its entirety.

The Government cites to an inapplicable Supreme Court case, decided less than a year ago, to undermine the district court's proper award of fees for *seventeen years* of litigation. *Goodyear Tire & Rubber Company v. Haeger*, 137 S. Ct. 1178 (2017) ("*Goodyear*"), does not apply to fees granted pursuant to the EAJA, 28 U.S.C. § 2412(b), and has not altered or overruled the binding Ninth Circuit precedent the district court applied in reconsidering its fee award. In *Goodyear*, the Court, in the context of reviewing a sanction award based on a discovery abuse, in the absence of any prelitigation bad faith conduct, analyzed an award of fees granted through the "inherent powers" of the federal courts. *See id.* at 1186. *Goodyear* does not affect the analysis here for two clear reasons: First, its reasoning is limited to fee awards granted as an exercise of inherent powers, as opposed to under the EAJA. Second, *Goodyear* only applies when the bad-faith conduct at issue transpired *during* the litigation, in contrast to situations in which a litigants' bad faith conduct precedes and permeates the litigation, where an award of all fees might still be appropriate. *See id.* at 1188 (confirming that an award of

all fees incurred may be warranted when defense was "'part of a sordid scheme' to defeat a valid claim") (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 57 (1991)).

However, regardless of whether *Goodyear* applies, the district court's award of attorneys' fees should stand. In direct contrast to the admittedly wholly unsupported reasoning underlying the district court's fee award in *Goodyear*, the district court here carefully traced each fee to a specific instance of bad faith per the express order of the Ninth Circuit. As such, the fee award at issue here was not based on a mere temporal limitation or desire to punish Defendant; rather, the district court applied the proper causal analysis between the bad faith and the incurred fees. With such careful attention given to ensure each minute billed related to bad faith conduct, the district court's award does not constitute an abuse of discretion. Moreover, even if *Goodyear* is considered to be new authority, the law of the case doctrine requires that this Court's prior opinion controls.

Plaintiffs submit on cross appeal that given the fact that Powell's bad faith conduct has tainted these entire proceedings and that the Government has essentially been "defending the indefensible" throughout the course of this litigation, this Court should rule that Plaintiffs are entitled to all of their fees in this case. In the alternative, if this case is remanded, the district court should be directed to consider Powell's bad faith when re-calculating the fee award.

Although it has been apparent since Day One that Plaintiffs' rights had been violated by a corrupt federal official acting in the course and scope of his employment and were therefore entitled to compensation, the Government has unnecessarily prolonged this litigation for *seventeen years* to avoid accountability for its misconduct and bad faith. At most, the Government's appeal is a frivolous demand for "auditing perfection," which the Supreme Court has unequivocally declared is not required. Accordingly, Plaintiffs' award of attorneys' fees under the EAJA should be affirmed.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. Whether the district court acted within its discretion in awarding attorneys' fees pursuant to 28 U.S.C. § 2412(b) (The Equal Access to Justice Act) when it followed this Court's directive on remand by reducing the amount of its original fee order by over $200,000 and expressly tracing fees awarded to the Government's acts of bad faith.

2. Whether the law of the case doctrine prevents the application of a legal standard in this appeal that conflicts with the standard endorsed and applied by this Court in its prior ruling remanding this case for a recalculation of attorneys' fees.

3. Whether the district court acted within its discretion in awarding attorneys' fees for work during the second appeal when the district court found that

such work was traceable to the specific instances of bad faith which this

Court affirmed in that appeal.

4. Whether the district court acted within its discretion in finding that

Plaintiffs' untimely filing of their motion for fees on appeal was excusable

neglect which did not prejudice Defendant.

5. Whether the bad faith of former federal official Thomas Powell, who

attempted to extort bribes and sexual favors in exchange for favorable

outcomes in Plaintiffs' asylum applications while acting in the course and

scope of his employment, should be considered in awarding attorneys' fees

under § 2412(b).

## STATEMENT OF JURISDICTION

Plaintiffs do not contest Defendant's statement of jurisdiction as to the basis

of its appeal.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 over Plaintiffs'

cross-appeal. Following remand from the Ninth Circuit, the district court issued an

order granting Plaintiffs' motion for attorneys' fees on November 10, 2016. ER 1-

10. The Government timely filed a notice of appeal on January 9, 2017, ER 13-16,

and Plaintiffs timely filed a notice of appeal on January 23, 2017, ER 11-12; Fed.

R. App. P. 4(a)(3). This Court has jurisdiction over both appeals.

## STATEMENT OF THE CASE

### I.     STATEMENT OF THE FACTS

Plaintiffs Xue Lu ("Plaintiff Lu") and Jie Hao ("Plaintiff Hao") are Chinese

Nationals, whose rights were violated and who were subjected to outrageous

criminal conduct by an INS Agent, Officer Thomas Powell ("Powell"), while

applying for asylum.  On February 23, 2001, Plaintiffs brought this civil suit under

the Federal Tort Claims Act ("FTCA") seeking damages against the United States

for wrongs committed against them.  After a trial, the district court made the

following findings of fact:

### A.  Facts Related to Xue Lu

Plaintiff Lu fled to the United States in 1997 after she was abused by

Chinese police officers for allegedly violating China's family planning policy.  ER

211.[1]  She was pregnant when she left.  *Id.*  On or about February 15, 2000, Powell

interviewed Plaintiff Lu in the presence of her attorney to process and evaluate her

asylum application.  *Id.*

After calling her to arrange an appointment, Powell met Plaintiff Lu at her

residence on February 26, 2000, without her attorney, to supposedly evaluate her

asylum application.  *Id.*  At this meeting, Powell kissed Plaintiff Lu's neck and ear,

---

[1] As used herein, "ER" refers to the Excerpts of Record filed by Defendant in this
Appeal.  "SER" refers to the Supplemental Excerpt of Record filed by Plaintiffs in
support of their initial Brief.

touched her breast and buttocks through her clothing, and attempted to undress her. *Id.* When Plaintiff Lu rejected Powell's demands, Powell stated he would not approve her application. ER 212. Shortly after the meeting, Plaintiff Lu received a notification that her application for asylum had been denied. *Id.* She also suffered from a miscarriage, and experienced severe emotional distress that impacted her ability to maintain relationships. ER 212-13.

Plaintiff Lu returned to China in October 2009. ER 213.

**B. Facts Related to Jie Hao**

Plaintiff Jie Hao fled to the United States on or about September 5, 1999, after Chinese police interrogated Plaintiff Hao regarding her Christian faith, forced her to provide fingerprints for a "Confession Paper," prevented her from working, and beat her. ER 213. Plaintiff Hao left her husband and 7-year-old son in China. *Id.*

Plaintiff Hao filed her asylum application on December 5, 1999, and was interviewed by Powell, in the presence of her immigration attorney, on May 22, 2000. *Id.* Just like with Plaintiff Lu, Plaintiff Hao then received a phone call from Powell to arrange a meeting at her residence without her attorney present. ER 213-14. However, because Plaintiff Hao's immigration attorney had represented Plaintiff Lu and knew what Powell had done, Plaintiff Hao's attorney contacted the U.S. Department of Justice and made arrangements to have Plaintiff Hao wired for

sound and videotaped for her meeting with Powell. ER 214. On June 2, 2000, Plaintiff Hao met with an U.S. Department of Justice agent who instructed her to signal during the meeting with Powell if he began to touch her or engage in other improper conduct; the agents, observing the interaction concurrently on video, would then come out of a neighboring apartment to protect her. *Id.* Plaintiff Hao agreed to cooperate with the government to record a video and phone conversation between her and Powell. *Id.*

On June 4, 2000, Plaintiff Hao met with Powell at her residence. *Id.* While at this meeting, Powell told Plaintiff Hao he would grant her asylum in exchange for $2,000 and sexually assaulted her by forcefully slapping her buttocks multiple times in a "sexually aggressive manner." ER 214-15. Despite the prior agreement, agents did not come to her aid. ER 215. The district court found that Plaintiff Hao suffered emotional distress following this initial meeting. *Id.* at 215.

On June 8, 2000, Plaintiff Hao met with Powell for a second meeting at her residence. *Id.* Again, she was wired for sound and videotaped for this meeting. *Id.* Further, Plaintiff Hao gave Powell $2,000, provided to her by the U.S. Department of Justice, to "accept" the bribe demanded of her at the first meeting. *Id.* Powell touched Plaintiff's knee, asked for a hug, and kissed her cheeks at this meeting. *Id.* Plaintiff Hao experienced severe emotional distress as a result. ER 216.

Based on the evidence collected from the sting operation, the United States indicted Powell for his misconduct. *See Xue Lu v. Powell*, 621 F.3d 944, 946 (9th Cir. 2010). Plaintiff Hao testified in the criminal trial. ER 216. On August 3, 2004, a jury convicted Powell of deprivation of Lu's civil rights under color of law in violation of 18 U.S.C. § 242 and seeking bribes from both Lu and Hao in violation of 18 U.S.C. § 201(B)(2)(A). *Xue Lu*, 621 F.3d at 946-47.

Meanwhile, Plaintiff Hao's asylum application was referred to the immigration Court on March 18, 2005, and her application was finally granted on August 3, 2007—seven years after she filed her application. ER 216. The delay and ensuing prolonged separation from her family caused Plaintiff Hao emotional distress. *Id.*

## II.     PROCEDURAL HISTORY

Plaintiffs filed an FTCA Complaint against the United States and various official on February 23, 2001. This section briefly summarizes the nearly seventeen years of litigation that followed.

### A. After Winning an Appeal, Plaintiffs Prevailed at Trial When the District Court Found that Defendant was liable for violation of Civil Code § 52.1 and IIED.

Plaintiffs' original complaint alleged Defendants deprived Plaintiffs of constitutional rights, committed assault and battery, and intentionally inflicted emotional distress. ER 227. In several motions to dismiss, Defendant argued that

because Powell's misconduct was sexual in nature, Powell was acting outside the

course and scope of his employment and the sexual misconduct did not create

respondeat superior liability. Appellee's Brief on First Appeal at 26-36 (arguing

that the Government could not be liable for Powell's conduct due to the sexual

nature of the conduct).[2] The district court initially agreed, and found that Powell's

actions were outside the course and scope of his employment and dismissed

Plaintiffs' claims. ER 227-236. Plaintiffs appealed. ER 236. Defendant focused

on the assaultive nature of Powell's conduct in its attempt to avoid liability for his

offensive conduct. *Id.* 22-26 (arguing Government cannot be liable for Powell's

intentional torts of assault and battery)

 On September 2, 2010, this Court reversed in part and remanded. *Xue Lu v.*

*Powell*, 621 F.3d at 951. Specifically, this Court found that Powell "acted within

the scope of his employment" and, accordingly, the United States could be liable

under the FTCA. *Id*. at 949 ("To compensate his victims, spread the loss, and

stimulate the government to greater vigilance in controlling aberrant behavior,

*California law makes the United States bear the cost of Powell's conduct*,

unauthorized but incidental to the asylum system.") (emphasis added); *see also id.*

at 949-51. This Court held that Plaintiffs could proceed on their claims for

intentional infliction of emotional distress ("IIED") and interference with

---

[2] Plaintiffs are citing to Appellee's Brief in the first appeal of this case, filed on
July 1, 2009. Case No. 08-56421; Dkt.Entry: 6976834.

Plaintiffs' rights under California Civil Code § 52.1.  *See id*.  In ruling Plaintiffs could proceed on the IIED claim, this Court held that IIED is a "tort at common law [that] is distinct from assault or battery," and that "[i]t may be committed intentionally or recklessly."  *Id*. at 950.  As such, the claim was not barred by the intentional tort exception.

Plaintiffs prevailed at the ensuing trial following the Ninth Circuit's remand. The district court found that the Government was liable for violation of California Civil Code § 52.1 and IIED, noting that the "IIED occurred in each instance in which Powell demanded money or sexual gratification from Lu or Hao as a condition for exercising his discretion in favor of asylum."  ER 218.  On August 5, 2013, the district court entered judgment in favor of Plaintiffs Lu and Hao in the amounts of $500,000 and $700,000, respectively.  ER 220, 221.

## B.  The District Court Found Defendant Acted in Bad Faith and Awarded Attorneys' Fees Under the EAJA.

On May 23, 2014, the district court awarded attorneys' fees in the amount of $881,675.75, after finding Defendant acted in bad faith both before and during the litigation process.  ER 189-192, 201.  The district court held that, starting on June 8, 2000, the Government initiated a course of bad faith conduct which infiltrated each and every aspect of the resulting litigation.

Specifically, the district court determined the Government acted in bad faith in four instances, when it: (1) failed to come to Hao's aid during the sting

operation in June 2000, and (2) failed to adjudicate Hao's asylum application for seven years until the conclusion of Powell's criminal trial at which Hao testified; (3) argued throughout the case that Hao's agreement to assist in the sting operation amounted to consent or assumption of risk to Powell's misconduct and resulting damages, and (4) continued to argue Plaintiffs' claims were barred under the intentional tort exception to the FTCA despite this Court's holding that IIED was an injury distinct from assault and battery.  ER 189-192.

The district court found that the hours billed were reasonable, and awarded the lodestar amount of $881,675.75 to Plaintiffs' counsel.  ER 201.

## C. The Ninth Circuit Affirmed Three of the Four of the District Court's Findings of Bad Faith in Second Appeal and Remanded with Instructions to Decide What, If Any, Changes to Make in the Fee Award.

Defendant appealed both the district court's findings of liability and damages.  With regard to liability and damages, the Ninth Circuit rejected every single argument proffered by Defendant.  *Xue Lu*, 638 Fed. App'x at 616-18.

Moreover, this Court affirmed three of the district court's four findings of bad faith.  The Ninth Circuit upheld the district court's findings that the agents' failure to intervene during the June 2000, sting operated "could reasonably be seen as a showing of blatant disregard for Hao's well-being" and constituted bad faith. *Id.* at 619.  In so holding, this Court expressly recognized that a court "*may*

*consider the government's prelitigation actions in assessing bad faith*." *Id.* at 618 (emphasis added).

After noting that the "government has not even hypothesized a legitimate reason or the delay," this Court further affirmed the district court's findings that the delay in processing Plaintiff Hao's asylum application "despite having clear proof of [Powell's] corruption" constituted bad faith. *Id.* at 619.

This Court additionally affirmed the district court's findings that the Government acted in bad faith by arguing that, because Plaintiff Hao agreed to the sting operation, Plaintiff Hao consented to Powell's sexual battery: "Going to a place knowing wrongdoing may occur is not consent to it; nor is agreeing to help collect evidence of it should it occur. The Government cites no remotely similar case supporting its position and its argument has little force." *Id.* at 616-17. As such, the Ninth Circuit "agree[d]" with the district court's conclusion that the argument was "meritless and offensive." *Id.* at 618.

The Ninth Circuit reversed the district court's finding of bad faith only with respect to the intentional torts argument, and found that Defendant provided a "non-frivolous" justification for its continued reliance on this argument at trial despite its prior decision. *Id.*

Because the Ninth Circuit reversed finding of one instance of bad faith, the Court vacated and remanded the fee award "to allow the district court to decide

what, *if any*, changes should be made to the award of fees incurred after June 8, 2000." *Id.* at 619 (emphasis added).[3] Importantly, the Ninth Circuit's prior order makes abundantly clear that Plaintiffs' counsel could receive fees for prelitigation bad faith. *Id.* at 618 (A court "may consider the government's prelitigation actions in assessing bad faith.").

### D. On Remand, the District Court Followed the Ninth Circuit's Holding

On remand, both parties submitted substantial briefing as to the issue of attorneys' fees. Plaintiffs initially submitted a memorandum of points and authorities regarding the Ninth Circuit's holding, and argued that the district court was not obligated to modify any of its prior award, and no decrease in the attorneys' fees award was warranted. SER 79-105. Plaintiffs sought $877,562.75 in fees. SER 84. Plaintiffs argued that Powell's underlying conduct, in extorting Plaintiffs for money and sexual favors in exchange for favorable rulings in their asylum applications while acting in the course and scope of his duty, constituted bad faith. SER 30 ("Further, Defendant completely disregards that Powell's conduct was inherently in bad faith – especially when it was also found to be criminal – and was part of the totality of the circumstances. Plaintiffs' case was affected by bad faith from the outset."). Defendant, however, adopted a highly

---

[3] In a footnote, the Ninth Circuit vacated $4,113 in fees awarded for work prior to June 8, 2000. *Id.* at 619, n3.

piecemeal, mathematical approach and argued Plaintiffs were only entitled to a mere $15,745.38 for work in the underlying case.  SER 30-46; SER 106-133.

After considering the briefing and oral argument of both parties, the district court ordered Plaintiffs to "identify the specific tasks performed (including the time spent for each task and by whom, date of task, and supporting billing records for the tasks) and the particular instance(s) of bad faith affirmed by the Circuit for which the task is traceable."  SER 1.

In response, Plaintiffs' counsel submitted a detailed declaration depicting how each minute of billed time was attributable to one or more of the specific findings of bad faith upheld by the Ninth Circuit.  ER 18-22.  Work performed due to the Governments' failure to intervene was coded with a "FI," the delay of Plaintiff Hao's asylum application with a "D," and the Government's consent argument with a "C."  *Id.*; *see also* ER 23-106.  Plaintiffs' counsel excluded any work performed solely on behalf of Xue Lu, since the findings of bad faith related only to Plaintiff Hao.  ER 20; *see also* ER 23-106.  In total, Plaintiffs' counsel deleted approximately 553.83 hours of billed time after the court requested a more detailed tracing to Defendant's bad faith.

Given Plaintiffs' counsel's designation of the work attributable to Defendant's bad faith with as much specificity as possible, the district court awarded $676,751.00 in fees to Plaintiffs' counsel for work performed in the

underlying action. ER 4. The district court expressly found that such fees were "traceable to one or more of the three findings of bad faith by the Government." *Id.* Indeed, the fact that the district court's award of $676,751.00 was markedly lower than Plaintiffs' request for $877,562.75 in fees clearly demonstrates that the district court carefully traced each billed entry to a finding of bad faith.

Nonetheless, the district court did not consider Plaintiffs' arguments that Powell's extortion constituted bad faith, though this was briefed in Plaintiffs' moving papers and addressed at oral argument in the second appeal, reasoning:

> The Ninth Circuit remanded the case so that the Court "may consider what, if any, modification of the fee award is appropriate in light of this opinion." The Circuit's opinion did not address Powell's prelitigation conduct since this Court made no findings as to such conduct for purposes of finding bad faith under § 2412(b). Accordingly, Powell's pre-litigation conduct is irrelevant for purposes of determining fees.

ER 4, n.7. Because the district court did not decide whether Powell's conduct could constitute bad faith, the district court failed to consider Plaintiffs' argument that fees should be awarded for the entirety of the litigation. However, this Court is not so limited in its jurisdiction and can consider Powell's inarguable bad faith conduct.

Plaintiffs additionally filed a separate motion for attorneys' fees for work performed on appeal. SER 47-78. In response, Defendant argued that Plaintiffs were not entitled to *any* fees for work performed on appeal. SER 12-21.

Prior to considering the merits of Plaintiffs' untimely motion for fees on appeal, the district court found that Plaintiffs' delay in filing that "was a result of excusable neglect." ER 8. The district court adhered to the precedent set forth in *Pioneer Inv. Servs. Co. v. Brunswick Associates Ltd. P'ship*, 507 U.S. 380, 395 (1993), and specifically found that: "(1) there is no evidence of prejudice to the Government; (2) the delay (i.e., 16 days) was not lengthy and did not impact judicial proceedings; (3) the reason for the delay was Plaintiffs' counsel's misinterpretation of the law; and (4) there is no evidence of bad faith." ER 8.

Finding Plaintiffs' untimely filing to be the result of excusable neglect, the district court then awarded $314,651.50 in fees for work performed on the second appeal and following remand. ER 9. As before, Plaintiffs' counsel excluded all work performed exclusively on behalf of Xue Lu and coded each entry of billable time with a corresponding finding of bad faith. ER 19-20, 107-131. Noting that Defendant pursued the same arguments on appeal that the district court found to be in bad faith (findings affirmed by the Ninth Circuit), the district court found that the fees awarded were "traceable to one or more of the three findings of bad faith by the Government." ER 9, n.11.

# STANDARD OF REVIEW

This Court reviews a "district court's decision regarding the amount of an award of [attorneys'] fees under the EAJA for abuse of discretion." *Rodriguez*, 542 F.3d at 709.[4]

This Court can reverse "a district court's findings regarding a party's bad faith" only if such a finding is clearly erroneous. *Id.* at 709. As such, a reversal is appropriate only if the finding is "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009).

This Court reviews for abuse of discretion a district court's findings of excusable neglect for an untimely filing. *Pincay v. Andrews*, 389 F.3d 853, 860 (9th Cir. 2004) ("There should similarly be no rigid legal rule against late filings attributable to any particular type of negligence. Instead, we leave the weighing of *Pioneer's* equitable factors to the discretion of the district court in every case.").

---

[4] Plaintiffs contend that with respect to the issue presented in the cross appeal (i.e. whether Powell's bad faith can be considered in the fee award), this Court should apply the *de novo* standard of review as the district court believed that based on this Court's prior decision, it could not decide that issue on remand.

# SUMMARY OF THE ARGUMENT

## I.     IN RESPONSE TO APPELLANT'S PRINCIPLE BRIEF

The district court's award of $991,402.50 in fees for Defendant's bad faith should be affirmed in its entirety.

### A.  Fees Awarded in the Underlying Action

First, the district court's revised fee award should not be disturbed because the district court followed this Court's directive on remand.  The Ninth Circuit has already affirmed that Defendant's failure to intervene and come to Plaintiff Hao's aid during the sting operation, the wholly unnecessary five-year delay of Plaintiff Hao's asylum application, and the dogged pursuit of the "offensive" argument that Plaintiff Hao consented to sexual assault and battery constituted bad faith.  *Xue Lu*, 638 Fed. App'x at 618-19.  In so holding, the Ninth Circuit found that a court "*may consider the government's prelitigation actions in assessing bad faith*."  *Id.* at 618 (emphasis added); *accord Rodriguez*, 542 F.3d at 712 (finding that "prelitigation conduct might be relevant to an award of fees for bad faith conduct during the litigation" and approving the district court's consideration of the "totality of circumstances, including conduct prelitigation and during trial") (internal citations omitted).

The Government's argument flies in the face of this Court's 2016 ruling. Defendant argues the district court "erred in awarding attorney's fees solely on the

basis of prelitigation conduct unrelated to the litigation" and accuses the district court of doing an end run around the FTCA. App. Dkt. 14 at 21. Given that the Ninth Circuit has ruled that the award of fees was proper but remanded only to have the fees (possibly) adjusted, this argument is frivolous and offensive.

Moreover, wholly absent from Defendant's analysis is the recognition that the prelitigation bad faith conduct, as well as the delay in considering Plaintiff Hao's asylum claim, formed the basis for the award of Plaintiff Hao's damages. These issues were hotly contested in the trial of the matter. The Government argued that Powell's assaultive conduct should result in a finding of no damages for Plaintiff Hao, because it was outside of the harm caused by the permissible torts and the discretionary function exception barred a finding of liability for the delay in Plaintiff Hao's asylum application and was unrelated to Powell's conduct. As the presiding trial judge, Judge Marshall was in the ideal position to assess Plaintiffs' tracing of the bad faith to attorneys' fees. Contrary to Defendant's myopic approach, a trial is not just about liability. The harm to Plaintiff Hao and the damages awarded thereby constituted a major portion of the litigation in this case, and were directly related to the Government's bad faith.

In addition, the law of the case doctrine precludes re-examination of the Ninth Circuit's prior holding that the Government acted in bad faith, including its findings of prelitigation bad faith. This doctrine was created to avoid endless

litigation, promote stability for litigants, and preserve judicial resources.  *See United States v. U.S. Smelting Refining & Mining Co.*, 339 U.S. 186, 198 (1950) ("The rule of the law of the case is a rule of practice, based upon sound policy that when an issue is once litigated and decided, that should be the end of the matter."). The fact that Defendant has been able to avoid responsibility for its misconduct for seventeen years demonstrates the need to apply this doctrine in the instant case.

Because the issue of Defendant's bad faith had been thoroughly litigated in both the district court and in the Ninth Circuit, the district court was compelled to follow the Ninth Circuit's directive and award fees incurred as a result of each instance of bad faith.  As such, the district court acted within its discretion in awarding fees it expressly found were "traceable" to specific instances of bad faith, after an exacting review of Plaintiffs' attorneys' timesheets.  The district court required Plaintiffs' counsel to connect every billed minute with a specific finding of bad faith.  Plaintiffs' counsel then categorically eliminated all work solely connected to Plaintiff Xue Lu, and eliminated any other work not traceable to a finding of bad faith.  In total, Plaintiffs eliminated approximately 553.83 hours. The remaining hours expressly related to a finding of bad faith, as more fully explained below.  The award properly reflected a *causal*, rather than a mere temporal limitation.  Thus, the district court's award promoted the "essential goal

in shifting fees to do rough justice, not to achieve auditing perfection," and should be affirmed. *Fox v. Vice*, 563 U.S. 826, 838 (2011).

The Supreme Court's decision in *Goodyear* does not apply in this case. In *Goodyear*, the Supreme Court reversed a district court's award of sanctions against a party for the "particularly egregious behavior" of withholding vital evidence during the litigation. The case did not concern prelitigation bad faith, and the Court's opinion does not change the federal common law as to the propriety of issuing fee awards for prelitigation bad faith. Rather, the Court held that, when acting under its "inherent authority," a court's ability to sanction bad faith is limited to awarding attorneys' fees in the amount that was directly caused by the party's bad faith. 137 S. Ct. at 1183-84.

The rationale and justification for limiting a court's ability to issue sanctions while acting under "inherent authority" is entirely inapplicable where the Court is expressly authorized by statute to award sanctions to the prevailing party. 28 U.S.C §§ 2412(b), 2412(d)(1)(a). The purpose of the EAJA and the applicable fee-shifting sections cannot be served by limiting a court's ability to award attorneys' fees to the prevailing party. To date, no court has applied *Goodyear* to an award of fees given under the EAJA. *Goodyear* does not apply to the award of fees in this instance, and the Government should not be able to rely on a case decided less than a year ago to avoid responsibility for its repeated bad faith spanning a seventeen-

year litigation.  Accordingly, the district court's revised fee award, which followed the directive of the Ninth Circuit and awarded fees found "traceable" to Defendant's bad faith, should not be disturbed.

### B.  Fees Awarded for the Second Appeal and Subsequent Remand

Second, the district court acted well within its discretion in granting attorneys' fees for work performed on the second appeal and following the remand.

As a preliminary matter, the district court properly permitted Plaintiffs' untimely filing for fees after finding the misfiling was due to excusable neglect. The district court not only stated, but also applied the proper standard set forth in *Pioneer Inv. Servs. Co.*, 507 U.S. 380.  Defendant cannot point to any evidence that the district court failed to consider, and it is clear that the district court heard argument on the very points the Government contends were improperly excluded from consideration.  Defendant's mere disagreement with the district court's reasoning does not warrant reversal.

Substantively, the district court's award of fees should similarly stand. Defendant attempts to parse the Ninth Circuit's words in order to argue the appeal was not taken in bad faith.  This does not change the simple fact that the Government pursued arguments and attempted to defend acts in the most recent appeal that the district court found to be made in bad faith.  The Ninth Circuit agreed.  Because the appeal contained the same arguments and defenses found to

be in bad faith by the Ninth Circuit, the district court was again justified in awarding fees for the work of Plaintiffs' counsel on that frivolous appeal, which were found to be attributable to Defendant's bad faith. *Brown v. Sullivan*, 916 F.2d 492, 497 (9th Cir. 1990) (holding that a district court "may award attorney fees at market rates for the entire course of litigation, including time spent preparing, defending, and *appealing* the two awards of attorney fees, if it finds that the fees incurred during the various phases of litigation are in some way traceable to" the bad faith conduct) (emphasis added).

## II.        ON CROSS-APPEAL

On cross appeal, Plaintiffs contend that Powell's misconduct, *while acting in the course and scope of his employment with the government*, in attempting to extort money and sexual favors from Plaintiffs in exchange for favorable rulings in their applications for asylum, constitutes bad faith warranting attorneys' fees. Despite the fact that Plaintiffs have argued that Powell's bad faith criminal conduct effected the entire litigation and that as a result, Plaintiffs should be awarded fees for the entire litigation, neither this Court nor the district court has substantively addressed that argument. Therefore, Plaintiffs request that either this Court rule that Plaintiffs are entitled to fees for the entire litigation based on Powell's bad faith or, in the event that this case is remanded, the district court be directed to consider Powell's bad faith in determining the fee award.

Awarding fees for Powell's bad faith is proper as courts must consider the "totality of circumstances" when making bad faith determinations. *Rodriguez*, 542 F.3d at 712; *see also Lauritzen v. Lehman*, 736 F.2d 550, 559 (9th Cir. 1984) ("[R]ecovery under the bad faith exception may be based on the actions that led to a lawsuit as well as the conduct during litigation."). Courts may consider the conduct underlying the litigation in finding bad faith, so long as the award of attorneys' fees is not "based *solely* upon a finding of bad faith in the conduct underlying the lawsuit." *Rodriguez*, 542 F.3d at 712 (citing *Ass'n of Flight Attendants v. Horizon Air Indus.*, 976 F.2d 451, 550 (9th Cir. 1992)). Because the Ninth Circuit previously determined that Powell was acting in the course and scope of his employment, Powell's bad faith should be attributed to the Government.

This misconduct and blatant bad faith in extorting sexual favors and money undoubtedly gave rise to this litigation, which the Government should have attempted to resolve instead of fighting tooth and nail for seventeen years. The Government should be liable for all incurred fees from the initiation of the litigation.

# ARGUMENT IN RESPONSE TO DEFENDANT'S PRINCIPAL BRIEF

### I. THE DISTRICT COURT PROPERLY FOLLOWED THE NINTH CIRCUIT'S DIRECTIVE ON REMAND WHEN IT RECALCULATED THE FEE AWARD.

The district court acted within its wide discretion in awarding fees pursuant to 28 U.S.C. § 2412(b) for Defendant's bad faith, including its prelitigation bad faith. Pursuant to the Ninth Circuit's order on remand, the district court only awarded fees that were found to be directly attributable to Defendant's bad faith, eliminating approximately 553.83 hours in its thorough review. Such an award is consistent with this Court's jurisprudence regarding fees granted in EAJA cases and with this Court's prior holding. The doctrine of law of the case precludes re-examination of this Court's prior holdings in this case, and should be applied in this instance to conclude seventeen years of litigation. *Goodyear*, which does not apply to awards under § 2412(b), does not change this analysis.

### A. The Law of the Case Doctrine Precludes Re-Examination of This Court's Previous Fees Ruling.

Pursuant to the law of the case doctrine, Defendant is not allowed to challenge this Court's prior findings of bad faith, including its findings of prelitigation bad faith. In fact, Defendant's bad-faith attempt to re-litigate issues that, at this juncture, have already been decided by the courts *three times* and to prolong this seventeen-year litigation demonstrates the very real need to apply this

doctrine to its fullest and to put an end to this repetitive, seemingly never-ending lawsuit.

When an appellate court decides a legal issue, the decision is not open to re-litigation in subsequent proceedings in the same case. *United States v. Jingles*, 702 F.3d 494, 499 (9th Cir. 2012). This doctrine is founded upon the "sound policy that when an issue is once litigated and decided, that should be the end of the matter." *U.S. Smelting Refining & Mining Co.*, 339 U.S. at 198. Without this doctrine, endless changes "would create intolerable instability for the parties." *Ridgeway v. Montana High School Ass'n*, 858 F.2d 579, 587 (9th Cir. 1988). As such, a final Ninth Circuit decision on a legal issue becomes law of the case and is binding upon the district court on remand, as well as upon any subsequent Ninth Circuit panel hearing the matter.

Given the strong policy of preserving judicial economy, courts should be reluctant to re-litigate previously decided issues. *See Waggoner v. Dallaire*, 767 F.2d 589, 593 (9th Cir. 1985). This Court has recognized only narrow exceptions, allowing reconsideration only "where '(1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial.'" *Gonzalez v. Arizona*, 677 F.3d 383, 390 (9th Cir. 2012) (en banc), *aff'd sub nom. Arizona v. Inter Tribal Council of Arizona, Inc.*,

570 U.S. 1 (2013) (quoting *Jeffries v. Wood*, 114 F.3d 1484, 1489 (9th Cir. 1997) (en banc)).[5]  With respect to intervening controlling authority, courts have required a "clearly irreconcilable" change in the law which would directly impact the holding of the case before reconsidering the issue.  *See, e.g.*, *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc) ("We hold that the issues decided by the higher court need not be identical in order to be controlling. Rather, the relevant court of last resort must have undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable."). As explained herein, nothing in *Goodyear* requires this Court to re-examine its January 2016 opinion, and nothing is clearly irreconcilable with this Court's holdings in *Rodriguez.*

The Ninth Circuit has already considered Defendant's arguments, and expressly stated that "[a] court may consider the government's prelitigation actions in assessing bad faith."  *Xue Lu*, 638 Fed. App'x at 618.  This Court then found that, in failing to come to Plaintiff Hao's aid when Powell forcefully spanked her during the sting operation, "the agent's actions could reasonably be seen as showing a blatant disregard for Hao's well-being" and could therefore constitute bad faith.  The Ninth Circuit further confirmed that the Government's delay of

---

[5] Although panels of the Ninth Circuit have sometimes stated the exceptions somewhat differently, when sitting en banc the Ninth Circuit has "consistently identified only [these] three exceptions."  *See Jingles*, 702 F.3d at 503 n.3 (adopting the "formulation expressed in *Gonzalez* and *Jeffries*").

Hao's asylum application, "despite having clear proof of [Powell's] corruption," constituted bad faith. *Id.* at 619. This prelitigation bad faith set the tone for the litigation, as the Ninth Circuit additionally found that the Government acted in bad faith during the litigation in doggedly pursuing the "offensive" argument that Plaintiff Hao consented to Powell's conduct.

Given its rulings, the Ninth Circuit expressly found that the district court could award fees incurred after *June 8, 2000*—the date of the sting operation—and found that *no changes might be necessary* to the fee award, in the district court's discretion. *See Xue Lu*, 638 Fed. App'x at 619 (vacating and remanding "the fee award to allow the district court to decide *what, if any*, changes should be made to the award of fees incurred after June 8, 2000") (emphasis added).

To be sure, this Court's use of the phrase "what, if any, changes should be made" was no accident. Earlier in the opinion, the Court again used that phrase, attributing the quotation to the Ninth Circuit's prior decision in *Rodriguez*. *See id.* at 618 ("As in [*Rodriguez*], we vacate and remand so that the district court 'may consider what, if any, modification of the fee award is appropriate in light of this opinion.'") (quoting *Rodriguez*, 542 F.3d at 715). An examination of *Rodriguez* confirms that, in repeatedly echoing and citing this language, the Ninth Circuit in *Xue Lu* was directing the district court to follow the approach set out in *Rodriguez*,

where the Court, after determining that one of the bad-faith findings by the district court required reversal, held as follows:

> Thus, even though the court may award fees for the entire course of litigation "if it finds that the fees incurred during the various phases of litigation are in some way traceable to the ... bad faith," *Brown*, 916 F.2d at 497, we cannot determine from the record exactly what fees are traceable to the government's bad faith when the defense of consent is removed from the calculation. *Moreover, the district court is in the best position to make this determination. Cf. id.* (concluding that the district court erred in not finding bad faith and remanding so that the district court could exercise its discretion to award attorney's fees "in some way traceable to the ... bad faith"). On this basis, *we remand to the district court so that it may consider what, if any, modification of the fee award is appropriate* in light of this opinion.

*Rodriguez*, 542 F.3d at 713 (emphasis added). Thus, in repeatedly referring to *Rodriguez*, this Court gave clear instruction to the district court as to how it was to proceed on remand – instruction which the district court followed to the letter.

Defendant, however, ignores this binding precedent and instead argues that the district court should only have considered the bad faith in arguing Hao consented to the physical assault. Defendant contends that because the consent argument was not made before May 2011, no fees should be given prior to that date. This argument is contrary to precedent stating prelitigation bad faith could justify an award of fees and is further directly contrary to this Court's prior ruling that Plaintiffs' were entitled to fees beginning as early as June 2000. Essentially, it is entirely unpersuasive and unsupported.

The district court was obligated to consider prelitigation conduct as the Ninth Circuit directed the district court to "decide what, *if any*, changes should be made to the award of fees incurred after June 8, 2000." *Id.* at 618 (emphasis added). Indeed, if the Ninth Circuit felt that fees should be limited to those incurred after 2011 when the consent argument was first raised, it would not have included the phrase "if any," which is a clear signal that in this Court's view *no changes to the fee award might have been required,* just as in *Rodriguez.* These issues were raised and briefed before and Defendant cannot relitigate this issue again.

The law of the case doctrine was created to avoid continuously relitigating the same issues. The district court has already considered the issue of an award of fees twice, and the Ninth Circuit has also already heard this specific matter once (though this is the third time this case has been appealed). In each instance, every court reviewing the Government's acts has undoubtedly and conclusively found the Government to have acted in bad faith. Yet, Defendant continues to challenge these judicial findings to avoid accountability. Were the Court to enable this bad faith litigation conduct by ordering yet another, time-consuming reassessment of the fee award from the district court, such an order would work a manifest injustice. *Cf. Rawlings v. Heckler*, 725 F.2d 1192, 1195 (9th Cir. 1984) (noting Supreme Court precedent dictating that "a court is to apply the law in effect at the

time it renders its decision, *unless doing so would result in manifest injustice* or there is a statutory direction or legislative history to the contrary") (emphasis added).

Accordingly, the law of the case doctrine should be applied to preclude re-examination that prelitigation bad faith could give rise to attorneys' fees and affirm the lower court's ruling on remand following the directive of the Ninth Circuit.

**B. Goodyear Does Not Apply to Fee Awards Granted Pursuant to § 28 U.S.C. 2412(b) and Does Not Change the Federal Common Law With Respect to Prelitigation Bad Faith.**

In *Goodyear*, the Supreme Court overturned a decision of an overreaching district court judge, exercising the "inherent power" of the courts without statutory authority, to essentially punish what the district court thought was "egregious" bad faith behavior in withholding discovery. *Goodyear*, 137 S. Ct. at 1183-85. Both the underlying rationale of the Court's opinion and the facts are clearly distinguishable from the case at hand.

*Goodyear* was a personal injury and products liability case in which plaintiffs' motorhome swerved off the road and flipped over allegedly due to a design defect of tires manufactured by the defendant. *Id.* at 1184. The parties eventually settled the case, though the litigation involved "contentious discovery battles." *Id.* Months later, however, plaintiffs' counsel read a newspaper article about a lawsuit involving the same model of tire wherein the defendant disclosed a

set of tests that had not been disclosed before.  *Id.*  The plaintiffs then moved for

sanctions for discovery fraud, claiming "Goodyear knowingly concealed crucial

'internal heat test' records . . . [which] entitled them to attorney's fees and costs

expended in the litigation."  *Id.*

The district court's opinion expressed the court's outrage at Goodyear's bad

faith and is telling.  The court found that, by withholding vital evidence of failed

test results, Goodyear had "engaged in a 'years-long course' of bad faith

behavior."  *Id.*  To be clear, there was no allegation that Goodyear engaged in any

prelitigation bad faith; rather, Goodyear's bad faith was limited to discovery

abuses during the litigation.  To sanction such conduct, the district court expressly

noted that it could only do so by exercising its inherent power: sanctions pursuant

to Federal Rule of Civil Procedure 11 were unavailable after final judgment in the

case and sanctions under 28 U.S.C. § 1927 could only reach Goodyear's attorneys

rather than Goodyear itself.  *Id.* at n.2.

Tellingly, the district court expressly acknowledged that sanctions, in the

"usual case," must be limited to the amount caused by the misconduct.  However,

since the bad faith rose to a "truly egregious level," the court awarded all of the

attorneys' fees in the case without any effort made to find a "causal link" between

those expenses and the sanctionable conduct.  *Id.* at 1185.  Thus, the court awarded

$2.7 million in fees to plaintiffs, and estimated that approximately $700,000 in fees had no connection whatsoever to the bad faith. *Id.*

A divided panel of this Court affirmed the lower court's $2.7 million award. *Id.* The Ninth Circuit justified upholding the full amount of fees by a temporal limitation: the fees were incurred "during the time when Goodyear was acting in bad faith." *Id.* The Ninth Circuit made no attempt to find any causal link between the fees incurred and the bad faith.

The Supreme Court reversed, holding that this award exceeded the powers of the courts acting in their inherent authority. Inherent powers are "not conferred by rule or statute," and allow courts to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* The Court held that courts must establish a "causal link" between the misconduct and fees while acting under its inherent authority, "given that such undelegated powers should be exercised with especial 'restraint and freedom.'" *Id.* at 1186, n.5 (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980) ("Because inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion."). When a court acting under inherent power issues a sanction without a causal link, the sanction becomes "punitive in nature" rather than compensatory, and constitutes a "kind of separate penalty" requiring additional "procedural guarantees applicable in criminal cases." *Id.*

Thus, the Court stated: "Hence the need for a court, *when using its inherent sanction authority* (and civil procedures), to establish a causal link—between the litigant's misbehavior and legal fees paid by the opposing power. That kind of causal connection . . . is appropriately framed as a but-for test . . ." *Id.* at 1186-87. It follows then that when a court *is authorized* by statute to sanction bad faith and issue fees to prevailing parties, the justifications discussed in *Goodyear* do not apply.

The EAJA grants courts with the express legislative authority to award attorneys' fees to prevailing parties in civil actions against the United States. The EAJA in pertinent part states:

> [A] court may award reasonable fees and expenses of attorneys. . . to the *prevailing party* in any civil action brought by or against the United States . . . The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

28 U.S.C. § 2412(b) (emphasis added); *see also Brown*, 916 F.2d at 495. The EAJA's purpose was to "ensure that [private parties] will not be deterred from seeking review of, or defending against, unjustified governmental action because of the expense involved in securing the vindication of their rights" and to "discourage federal agencies from taking frivolous positions." *Maritime Mgmt., Inc. v. United States*, 242 F.3d 1326, 1331 (11th Cir. 2001). Given the broad stated purpose behind the EAJA and the express legislative authority granting Courts

authority to award fees to the prevailing party, the rationale and justifications to limit a court's exercise of its "inherent power" simply do not apply.

In contrast to the *Goodyear* holding, courts are not acting under their "inherent authority" when issuing sanctions against the U.S. Government. First, without the express "waiver of sovereign immunity" contained in section 2412, the court's inherent authority "does not encompass the authority to impose monetary sanctions against the government." *See Alexander v. F.B.I.*, 541 F. Supp. 2d 274, 301 (D.D.C. 2008). Further, even when issuing sanctions against the Government pursuant to section 2412, the court's authority is limited to issuing such awards only to the "prevailing party." *See id.* ("Both subsections 2412(b) and 2412(d) provide that a court is authorized to award attorneys' fees and costs, but . . . only to a 'prevailing party.'"). It is thus clear that an award of sanctions against the Government under the EAJA is wholly distinct from an award of sanctions issued under the court's inherent authority.[6]

Moreover, section 2412(b) of the EAJA, which was enacted in 1981, provides that the United States shall be liable for attorneys' fees "to the same extent any other party would be liable under the common law." Therefore, it makes sense to consider the common law as it was interpreted at the time the

---

[6] To date, no court has applied *Goodyear's* but-for limitation of attorneys' fees to awards expressly granted under the EAJA.

statute was enacted as being controlling. *See Filarsky v. Delia*, 566 U.S. 377, 384 (2012) ("Under our precedent, the inquiry begins with the common law as it existed when Congress passed § 1983 in 1871.").

The common law in 1981 allowed for attorneys' fees to be based on pre-litigation conduct. *See Hall v. Cole*, 412 U.S. 1, 15 (1973) ("It is clear, however, that 'bad faith' may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation."), *overruled on other grounds as recognized in Mt. Graham Red Squirrel v. Madigan*, 954 F.2d 1441, 1462 (9th Cir. 1992).. Moreover, since the *Goodyear* "but for" standard was not part of the common law at the time the EAJA was enacted, it should not be applied to future EAJA cases, as Congress was unaware of the *Goodyear* standard when it passed the EAJA.

To be clear, courts awarding fees under the EAJA are not limited to narrow, but-for analysis; rather, courts are permitted to consider the "totality of circumstances" and the conduct underlying the litigation when deciding whether bad faith warrants issuance of attorneys' fees, so long as the fees are traceable to Defendant's bad faith. *Rodriguez*, 542 F.3d at 712; *Cazares v. Barber*, 959 F.2d 753, 754-55 (9th Cir. 1992). A court may not award fees based "'*solely* upon a finding of bad faith in the conduct underlying the lawsuit' . . . [but] 'prelitigation conduct might be relevant to an award of fees for bad faith during the litigation.'" *Rodriguez*, 542 F.3d at 712 (quoting *Ass'n of Flight Attendants*, 976 F.2d at 550).

As such, this Court and the Supreme Court have consistently held that bad faith supporting an award of attorneys' fees may be found in conduct that led to the lawsuit as well as conduct occurring in the course of the litigation. *Hall*, 412 U.S. at 15 ("[B]ad faith may be found, not only in the actions that led to the lawsuit but also in the conduct of the litigation."); *Lear Siegler, Inc., Energy Prod. Div. v. Lehman*, 842 F.2d 1102, 1117-18 (9th Cir. 1988) ("Prelitigation conduct has been held to constitute bad faith when a party, confronted with a clear legal duty, is so recalcitrant in performing that duty that the injured party is forced to resort to litigation to vindicate his rights."), *opinion withdrawn in part on reh'g*, 893 F.2d 205 (9th Cir. 1989).

Indeed, Defendant cannot point to a *single* binding precedent that stands for the proposition that prelitigation bad-faith conduct, when in conjunction with litigation bad-faith conduct, cannot be considered in an award of attorneys' fees. *Cf. Kerin v. U.S. Postal Serv.*, 218 F.3d 185, 195-96 (2d Cir. 2000) ("While bad faith fees may not be awarded *solely* on the basis of prelitigation business conduct, district courts may properly consider such conduct in making a determination that there was bad faith sufficient to justify a fee award.") (emphasis added); *Shimman v. Int'l Union of Operating Engineers, Local 18*, 744 F.2d 1226, 1230, 1233 (6th Cir. 1984) (noting that "the only bad faith found to exist was that inherent in acts giving rise to the substantive claim," and holding that "the bad faith exception to

the American Rule does not allow an award of attorney fees based *solely* on bad

faith in the conduct giving rise to the underlying claim") (emphasis added);

*Sanchez v. Rowe*, 870 F.2d 291, 295 (5th Cir. 1989) ("[T]he government's

litigation posture was not in bad faith, so there is no basis for [plaintiff] to recover

fees under § 2412(b).") (emphasis added). Indeed, Defendant chiefly relies on the

*dissenting* opinion of Justice Kennedy in *Chambers*, 501 U.S. at 74, to support the

contention that a court may not consider pre-litigation bad faith, a proposition that

has necessarily been rejected by the majority. None of the cited precedent supports

Defendant's contention.[7]

Thus, under the EAJA, the award of attorneys' fees must be found to be "in

some way traceable to the bad faith." *Brown*, 916 F.2d at 497 ("The district court

may award attorney fees at market rates for the entire course of litigation,

including time spent preparing, defending, and appealing the two awards of

attorneys fees, if it finds that the fees incurred during various phases of litigation

are *in some way traceable* to the Secretary's bad faith.") (emphasis added).

Allowing district courts to award sanctions based on a consideration of the conduct

---

[7] Moreover, several of Defendant's cited cases explicitly recognize that the
holdings differ from Ninth Circuit precedent. *See Shimman*, 744 F.2d at 1231
(noting Ninth Circuit's decision in *McQuiston v. Marsh*, 707 F.2d 1082 (9th Cir.
1983) holds that the Ninth Circuit "would allow attorney fees based on bad faith in
the underlying acts."); *Sanchez*, 870 F.2d at 293 (noting that Ninth Circuit
precedent supports proposition that underlying conduct giving rise to lawsuit could
constitute bad faith).

of the parties throughout the entirety of the litigation, including prelitigation, promotes the EAJA's purpose of removing financial barriers to challenging governmental action and deterring frivolous arguments.

Nothing in *Goodyear* changes this analysis. *Goodyear* involved bad faith arising out of discovery abuses committed during the litigation, as the defendant withheld testing data vital to the litigation. *Goodyear*, 137 S. Ct. at 1185. The Court made no reference to any prelitigation bad faith in its holding, as none was involved. Defendant cannot point to any language in *Goodyear* to stand for the proposition that a court cannot award attorneys' fees caused by a party's prelitigation bad faith. Indeed, *Goodyear* recognized that the Supreme Court's majority opinion in *Chambers*, 501 U.S. 32, allows for consideration of bad faith conduct "preceding" the litigation. 137 S. Ct. at 1187.

Thus, *Goodyear* should not apply to this case. On its face, *Goodyear* only applies to awards pursuant to the "inherent authority" of the court, not the express, fee-shifting statutory scheme of the EAJA. Further, the stated purpose of the EAJA is not served when limiting the ability of the courts to only award fees incurred "but for" the government's bad faith. Moreover, *Goodyear* does not change federal common law recognizing a court's ability to award attorneys' fees caused by a party's prelitigation bad faith, and in any event this "but for" standard

grants considerable discretion to the district court to determine which fees would not have been incurred in the absence of bad-faith misconduct.

### C. The District Court Properly Awarded Fees for All Work Traceable to Defendant's Bad Faith.

Regardless of whether *Goodyear* applies to the case at hand, this Court should nonetheless affirm the district court's award. The district court's award was not punitive in nature; applied a causal, rather than temporal, limitation in only awarding fees found to be traceable to Defendant's bad faith; and promotes the "rough justice" of fee awards given the scope and magnitude of Defendant's bad faith in this action. *Fox*, 563 U.S. at 838.

Though seemingly limiting court's "inherent authority," the Supreme Court in *Goodyear* made sure to acknowledge that the opinions of district court are entitled to substantial deference. Citing to *Fox*, 563 U.S. 826, the Supreme Court explained:

> But as we stressed in *Fox*, trial courts undertaking that task "need not, and indeed should not, become green-eyeshade accountants" (or whatever the contemporary equivalent is). *Id*., at 838, 131 S.Ct. 2205. "The essential goal" in shifting fees is "to do rough justice, not to achieve auditing perfection." *Ibid*. Accordingly, a district court "may take into account [its] overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Ibid*. The court may decide, for example, that all (or a set percentage) of a particular category of expenses—say, for expert discovery—were incurred solely because of a litigant's bad-faith conduct. And such judgments, in light of the trial court's "superior understanding of the litigation," are entitled to substantial deference on appeal.

> *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 76
> L.Ed.2d 40 (1983).

*Goodyear*, 137 S. Ct. at 1187. The Ninth Circuit has similarly recognized the superior position of a district court to gauge how one party's bad faith impacted the litigation. *Rodriguez*, 542 F.3d at 713 ("Moreover, the district court is in the best position to make this determination [of what fees are 'traceable' to the bad faith].")

Here, the district court's award should be accorded similar deference and its order affirmed. Before issuing its order, the district court expressly ordered Plaintiffs to "identify the specific tasks performed (including the time spent for each task and by whom, date of task, and supporting billing records for the task) and the particular instance(s) of bad faith affirmed by the Circuit for which the task is traceable." SER 1. In response, Plaintiffs' counsel submitted detailed declarations of the hours billed, and coded each entry with a specific instance of bad faith. ER 18-136. Each entry traceable to Defendant's failure to intervene was coded with a "FI," the delay of Plaintiff Hao's asylum application was coded with a "D," and the consent argument was coded with a "C." ER 19 at ¶ 4.

Plaintiffs' counsel explained that the failure to intervene and the delay existed from the inception of and directly implicated the litigation. ER 19-20 at ¶ 5. For example, the failure to intervene was inherently tied to both the intentional tort bar argument central to Defendant's early motions to dismiss, as well as the argument that the sexual nature of Powell's conduct precluded a finding that

Powell was acting in the course and scope of employment under California law. Because the Government failed to intervene, Plaintiff Hao was subjected to a sexual assault and battery by Powell. In an extreme perversion of justice, Defendant not only permitted the assault and battery to occur, but then used the ensuing intentional tort – which only occurred because of Defendant's bad faith – to try to escape liability. But for the Government's failure to intervene, Powell would not have been able to commit this tort and Defendant would not have been able to pursue the intentional tort bar argument.

Here, Defendant's conduct in how it treated Plaintiff Hao – a woman who helped bring a criminal to justice – was despicable. Defendant used Plaintiff Hao as bait, and then failed to intervene when Plaintiff Hao was subjected to Powell's misdeeds. Further, Defendant's bad faith in permitting Hao to be assaulted and then failing to adjudicate her asylum claim for years while she was apart from her husband and child who remained in China formed a major part of Hao's damages. Once again, Defendant argued, both in pre-trial filings and during the trial, that because Plaintiff Hao testified that the worst part of her encounter with Powell was when he spanked her, that only nominal damages should be awarded because that conduct was outside of the scope of the permissible torts. SER 409-425; *see*

*generally* SER 161-408.[8] Moreover, the district court's Finding of Facts and Conclusions of Law emphasized the harm caused to Plaintiff Hao based on the delay in adjudicating her asylum claim as well as Powell's assault. ER 215-217. Thus, Defendant's bad faith directly impacted the litigation from its inception. The fact that Defendant's bad faith played such a prominent role in the damages awarded was taken into account by the trial judge, though ignored by Defendant in this appeal, and provides ample justification for affirmance of the trial court's ruling.

Plaintiffs' counsel further deleted any entry of time exclusively billed or related to pursuing Plaintiff Lu's claims, as the district court had not found that the Government had acted in bad faith with respect to Plaintiff Lu. In deleting any billing entry exclusively related to Lu and, further, any billing entry that could not be found traceable to a finding of bad faith, Plaintiffs' counsel deleted approximately 553.83 hours. The district court had sufficient evidence and

---

[8] Plaintiffs include excerpts of relevant trial proceedings to demonstrate how Defendant's bad faith directly impacted the litigation. A significant portion of the trial was spent proving the extent of and causes for Plaintiff Hao's emotional distress. See generally SER 183-229 (Plaintiff's expert, Dr. Lustig, discussing Hao's emotional distress); SER 230-320 (Hao's testimony); SER 272-277, 280-82 (Hao's testimony regarding distress from delayed asylum application). Moreover, as seen from the opening and closing statements of both counsel, Plaintiffs' counsel had to rebut Defendant's contention that Defendant could not be liable under the discretionary function and intentional tort exceptions, arguments directly tied to Defendant's bad faith in delaying Plaintiff Hao's asylum application and failure to intervene during the June 2000 sting operation, respectively. See generally SER 161-181 (opening statements); SER 231-407 (closing arguments).

detailed records to determine how each billed entry was traceable to a finding of bad faith.

Compared to the district court's fee award in *Goodyear*, the record in this case demonstrates the painstaking process in which the district court considered the *causal* connection between findings of bad faith and the award of fees. With such careful consideration, the award was clearly not given to punish the Government. Further, the fees were not merely calculated using a temporal limitation of June 8, 2000. Indeed, many entries *after* this date were still deleted because they were exclusively related to Lu or untraceable to a finding of bad faith. The district court, even after considering multiple briefs of the parties and oral argument, requested further evidence from Plaintiffs' counsel that the time was found traceable to a specific finding of bad faith. SER 1. Unlike the lower court in *Goodyear*, the district court did not simply abandon its duty to find a causal link between the fees and findings of bad faith. The record clearly demonstrates that the district court awarded fees *caused* by Defendant's bad faith, including Defendant's prelitigation bad faith.

Despite the district court's rigorous review, the Government speciously argues that the district court abused its discretion in not explicitly stating that the fees were incurred "but for" the bad faith. Defendant argues that Plaintiffs cannot recover *any* fees for any overlapping work performed between Plaintiff Hao and

Lu, even if such work clearly implicated Defendant's bad faith. Defendant's approach would have the district court count the exact number of pages of deposition testimony the word "consent" appears or the number of pages in a brief devoted to an argument to derive a specific mathematical percentage to award fees. SER 118-131, Dkt. 335 at 10-23 ("On March 28, 2012, Plaintiff Hao was deposed by the United States. Approximately 18 of the 177 pages or about 10.2% (i.e., 18/77) pertain to the consent defense. . . . [C]onsidering that the consent defense only comprises 10.2% of the deposition, it is reasonable to reduce the billable hours

. . .").

However, the district court's award serves the "essential goal" and promotes the "rough justice" of fee awards for bad faith. Defendant should not be able to avoid liability for its bad faith simply because Plaintiffs' counsel represented two victims of a government agent's criminal conduct, rather than just one. The Government is essentially asking that it be excused from its bad faith towards Plaintiff Hao simply because Plaintiffs' counsel also represented another one of Powell's victims. Such an approach would be a windfall for the Government, given that this Court expressly found the Government's actions toward Plaintiff Hao were in bad faith. Moreover, the Ninth Circuit can summarily reject Defendant's highly mathematical approach as *Goodyear* expressly rejects the

notion that district courts are expected to become "green-eyeshade accountants" to achieve "auditing perfection." *Goodyear*, 137 S. Ct. at 1187.

This case was hard fought in the district court, involving multiples rounds of motions to dismiss, amended pleadings, appeals, and a full trial. This was thus an "exceptional case" wherein "dominating reasons of justice" warrant the district court's fee award: the Government raised every conceivable, even if frivolous, argument to avoid liability, knowing that Powell's conduct was indefensible as the Government used Plaintiffs to criminally convict Powell. *Brown*, 916 F.2d at 495 (quotation omitted); *see also Rawlings*, 725 F.2d at 1195 ("Courtroom attempts to defend unreasonable agency actions usually will be unreasonable also.")

The district court undoubtedly has a "superior understanding of the litigation" and is in the best position to evaluate the "overall sense of [the] suit." *Fox*, 563 U.S. at 838. Because the district court paid careful consideration to finding a causal link between fees and acts of bad faith and given the breadth of Defendant's bad faith, in defending the indefensible, this Court should afford deference to the district court's findings and affirm the fee award.

## I. THE DISTRICT COURT ACTED WITHIN ITS DISCRETION IN AWARDING FEES TO PLAINTIFFS' COUNSEL FOR WORK PERFORMED DURING AND AFTER THE SECOND APPEAL.

The district court's award of $314,651.50 in fees for work performed on the second appeal and following remand should be affirmed. The district court cited

the appropriate standard and acted within its discretion in permitting Plaintiffs'
untimely filing for fees. Further, as Defendant continued to pursue the same
arguments the district court considered to be in bad faith on appeal which were
affirmed by this Court, the district court did not abuse its discretion in awarding
fees for bad faith.

### A. The District Court Acted Within Its Discretion in Finding Plaintiffs' Untimely Filing for Fees Was a Result of Excusable Neglect.

There is no per se bar against late filings; rather, the decision to permit or
deny a late filing is generally left to the discretion of the district court. *Pincay v.*
*Andrews*, 389 F.3d at 859 (9th Cir. 2004). When deciding whether an error was
due to any "excusable neglect," a court considers four equitable considerations: (1)
danger of prejudice to non-moving party, (2) length of delay and its potential
impact on judicial proceedings, (3) the reason for the delay, and (4) whether the
moving party's conduct was in good faith. *Pioneer Inv. Servs. Co*, 507 U.S. at
395.

Here, the district court appropriately stated and applied the relevant
standard, considering all arguments and evidence of the parties. Defendant claims
the district court abused its discretion in not considering Defendant's evidence, yet
there is no support of this argument in the record. Though the district court denied
Defendant's *ex parte* requesting leave to file a sur-reply, the court explained: "I

denied that thinking that you would be present at this hearing and would be permitted to address orally anything that you thought you should be able to put in a written response. So I'll give you an opportunity to be heard on that issue at this point." ER 158:2-6. Defendant was then able to present its arguments regarding the late filing, including presenting evidence to the court regarding the email which allegedly showed Plaintiffs were aware of the proper deadline to file their attorneys' fees motion. *Id.* at 158:11-159:11.

It is clear that the district court considered the Government's evidence, but nonetheless – as it was in its discretion to do – concluded that Plaintiffs' untimely motion was the result of excusable neglect. This finding is supported by the evidence. The email that Defendant argues purportedly demonstrates Plaintiffs' knowledge of the applicable deadline was dated August 6, 2013, almost three years prior to the Appellate Court's decision on the second appeal. ER 206. The email was sent by an associate, who no longer worked at the firm, immediately following the verdict in the district court. *Id.* Plaintiffs' counsel explained their understandable, though misplaced, reliance on the Rutter Group's Ninth Circuit Civil Appellate Practice Guide to calculate the deadline to bring a motion for fees under the EAJA *following an appeal*.[9] ER 175-76. It is an understandable mistake

_____

[9] According to Rutter Group's Ninth Circuit Appellate Practice Guide, "an EAJA fee application must be filed within 30 days of 'final judgment . . . The 30-day

51

to assume different deadlines applied to fees brought after a verdict in the trial court and an appeal.  Further, a 16-day delay in a lawsuit that has lasted approximately seventeen years, particularly when Defendant had notice of Plaintiffs' intention of filing the motion, would not cause any prejudice to Defendant.

Given this evidence, the district court was entirely within its discretion to find Plaintiffs' untimely filing was a result of excusable neglect.

### B. Plaintiffs Are Entitled to Fees Incurred Following the Second Appeal Because Defendant Continued to Pursue Arguments that Were Found to be in Bad Faith.

An EAJA fee award encompasses all aspect of the civil litigation, including appeals.  *See Comm'r, INS v. Jean,* 496 U.S. 154, 161-62 (1990); *Rodriguez*, 542 F.3d at 712 ("We hold that it is unnecessary to find that every aspect of a case is litigated by a party in bad faith in order to find bad faith by that party[]."); *Brown*, 916 F.2d at 497 (a district court "may award attorney fees at market rates for the entire course of litigation, including time spent preparing, and *appealing* the two awards of attorney fees, if it finds that the fees incurred during the various phases of litigation are in some way traceable to" prelitigation bad faith conduct).

---

period begins to run upon expiration of the 90-day period within which to file a petition for certiorari . . . Thus, the EAJA fee applicant has 120 days from issuance of the court's decision . . . to file the application."  Cal. Prac. Guide Fed. 9th Cir. Civ. App. Prac. Ch. 12-C at 12:168.1.

Plaintiffs are entitled to fees for work performed on the appeal. Defendant's reliance on *Callow v. Amerace Corp.*, 681 F.2d 1242 (9th Cir. 1982) is misplaced, and supports Plaintiffs' award of fees. First and foremost, *Callow* does not involve an award of fees against the government under the EAJA. The district court issued sanctions against plaintiff for bringing a wholly frivolous claim, a claim that had "been rejected by every court considering the claim," against the defendant under the court's inherent powers. *Id.* at 1242. The plaintiff appealed the court's award of sanctions, but did "not raise the frivolous . . . issue on this appeal." *Id.* Because the plaintiff did not raise the frivolous arguments on appeal, the Ninth Circuit held that "no fees will be allowed" under Rule 38 of the Federal Rules of Appellate Procedure. *Id.* Defendant fails to cite to any authority for the proposition that a court may not award attorneys' fees for bad faith which continued to the appeal.

Regardless of Defendant's attempts to parse out the language of this Court's order, the fact remains that Defendant's bad faith continued on appeal.[10] Defendant pursued the argument that Plaintiff Hao consented to Powell's misconduct by agreeing to help the government bring a criminal to justice on

---

[10] Defendant's contention that the Ninth Circuit did not find its arguments, including its arguments regarding Plaintiff's Hao's alleged "consent" to extortion, to be made in bad faith is unsupported by the record. Indeed, during oral argument, Justice Fisher of the Ninth Circuit indicated that Defendant's consent argument was "outrageous." *See* https://www.ca9.uscourts.gov/media/view_video.php?pk_vid=0000008742 at 6:35-7:27.

Appeal. Appellant Br. on Second App. at 21-25 ("Hao's consent to participate in the investigation thus necessarily included consent to being the target of an improper solicitation for money or sexual favors, and precludes Hao from obtaining damages caused by that solicitation.").[11] The district court and the Ninth Circuit agreed such an argument was "meritless and offensive." *Xue Lu*, 638 Fed. App'x at 618. As such, Plaintiff is entitled to fees incurred for defending against the Government's bad faith on appeal.[12]

## ARGUMENT IN SUPPORT OF PLAINTIFFS' CROSS APPEAL

### A. Powell's Repeated Attempts to Extort Plaintiffs for Money and Sexual Favors While Acting in the Course and Scope of Employment Constitutes Bad Faith, Which Supports an Award of Attorneys' Fees.

Courts have found that prelitigation conduct can constitute bad faith justifying an award of fees. However, neither this Court nor the district court has expressly ruled on whether Powell's criminal conduct is an additional basis for a finding of bad faith warranting fees under the EAJA, though Plaintiffs have made

---

[11] Plaintiff cites to Appellant's Brief in the Second Appeal of this litigation, filed December 8, 2014. Case No. 13-56715; Dkt. 29-1.

[12] Should this Court find that the district court's fee award for post-remand work constitutes an abuse of discretion, this Court may simply decrease the district court's award for appellate by $65,627.00. *See* SER 4 (noting that this amount represents "time spent on the post-Ninth Circuit briefing regarding attorneys' fees as well as their time on this fee motion.").

this argument throughout the case.[13]  Plaintiffs contend Powell's bad faith should

be an additional consideration in determining attorneys' fees.

Under the EAJA, a court must consider the "totality of the circumstances"

when assessing attorneys' fees in bad faith, such that "prelitigation conduct might

be relevant to an award of fees for bad faith conduct during the litigation."

*Rodriguez*, 542 F.3d at 712 (citing *Ass'n of Flight Attendants*, 976 F.2d at 550

(1990), and *Cazares*, 959 F.2d at 755).  Such considerations are a proper basis for

supporting a finding of bad faith so long as the award of attorneys' fees is not

"based *solely* upon a finding of bad faith in the conduct underlying the lawsuit."

*Id.*

Thus, in *Rodriguez*, the Ninth Circuit upheld the district court's

consideration of the government's prelitigation conduct to support its award of

attorneys' fees.  The lawsuit concerned an attempt by federal immigration officers

---

[13] Plaintiffs have raised the issue of Powell's bad faith since their first motion for attorneys' fees immediately following the trial, and repeated this argument to every court that has since considered this matter.  *See* SER 134-161 at 19 ("Given that the totality of circumstances support a finding that bad faith permeated the entire case, especially in light of government actor Thomas Powell's enormous bad faith in extorting and demanding sex from vulnerable asylum applicants, this criteria is easily satisfied here."); Oral Argument on Appeal (Dec. 9, 2015), 16:30- 17:11, available at https://www.ca9.uscourts.gov/media/view_video.php?pk_vid=0000008742  ("You can look at the underlying conduct of the government official involved in order to have that finding of bad faith . . . and in this instance, you have Powell's conduct");  ER 144:14-146:7 (arguing that Powell's conduct toward Hao and Lu should be considered in the oral argument regarding Plaintiffs' fees in the district court following the Ninth Circuit's remand).

to execute an administrative warrant for the arrest and removal of a "Marisela Rodriguez-Wence" at a residence located on Piedmont Street in Oakland, California ("Piedmont Residence"). *Id.* at 706. Despite having access to an INS file that provided an age and physical description of, as well as multiple addresses for the suspect (none of which were located on Piedmont Street), the officer performed a search for the suspect under a different name and with no date of birth. *Id.* at 707. No effort was made to cross-reference the information yielded from the new search with the information that had been previously collected, nor did any officer conduct any surveillance at the Piedmont Residence to ensure Rodriguez-Wence resided there. *Id.*

After plaintiffs prevailed against the government under FTCA, the district court awarded plaintiffs attorneys' fees. *Id.* at 708-09. In addition to government's bad faith in asserting the defense of privilege during the litigation, the district court considered the government's bad faith conduct "underlying the litigation—the unreasonably perfunctory search, a failure to follow INS policy requiring consent to enter the home, and the officers' conduct during the entry and search of the home." *Id.* The Ninth Circuit upheld the district court's finding of bad faith. Because "the pre-litigation conduct was only one of several grounds on which the district court granted attorney's fees," the Court held that "the district court did not excessively rely on the government's pre-litigation conduct." *Id.*

Here, Powell's underlying conduct in extorting sexual favors and bribes while acting in the course and scope of his employment constitutes bad faith. The Government cannot argue otherwise. Indeed, Plaintiffs helped the Government secure a criminal conviction against Powell for this very conduct. Therefore, because the Ninth Circuit has already found multiple, alternative grounds for Defendant's bad faith, Powell's prelitigation conduct underlying the lawsuit can and should be considered under the "totality of circumstances" as in *Rodriguez*.

## B. Plaintiffs Are Entitled to Attorneys' Fees for the Entirety of the Litigation.

Here, the totality of the circumstances supports a finding that bad faith permeated the entire case, especially in light of government-actor Powell's egregious bad faith in extorting and demanding sex and money from vulnerable asylum applicants. Indeed, this bad-faith conduct set the tone for the resulting litigation, which was further marred by bad faith. *See Cazares*, 959 F.2d at 754-55 (affirming the district court's granting of bad faith attorneys' fees where, considering the "totality of circumstances," Defendants' "arrogant and calloused attitude. . . from the beginning" permeated the litigation throughout). Despite having clear proof of Powell's corruption, Defendant denied justice to his victims and their advocates for seventeen years. *Rawlings*, 725 F.2d at 1195 ("Courtroom attempts to defend unreasonable agency actions usually will be unreasonable also."); *see also, e.g.*, *Gate Guard Servs., L.P. v. Perez*, 792 F.3d 554, 555 (5th Cir.

2015) ("Rather than acknowledge its mistakes, however, the government here chose to defend the indefensible in an indefensible manner. As a result, we impose attorneys' fees in favor of Gate Guard as a sanction for the government's bad faith.").

Because this bad faith infected the entire course of litigation, this Court should award the entire amount of attorneys' fees. Indeed, Plaintiffs should be entitled to fees incurred as a result of prosecuting and litigating Plaintiff Xue Lu's claims as well, since Powell's conduct impacted Plaintiff Xue Lu as well as Plaintiff Hao. Therefore, Plaintiffs would be entitled to fees for the entirety of the litigation even if the Court were to apply *Goodyear*'s "but for" causation standard. *Goodyear*, 137 S. Ct. at 1187-88 ("In exceptional cases, the but-for standard even permits a trial court to shift all of a party's fees, from either the start or some midpoint of a suit, in one fell swoop."). The Government's conduct – subjecting vulnerable, indigent asylum seekers to extortion and bribery, using these victims to prosecute a criminal and then denying these victims civil justice – qualifies as an "exceptional case," which justifies an award of fees from the inception of the case.

## CONCLUSION

As the Supreme Court observed decades ago, a "request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *see also Fox*, 563 U.S. at 838 ("We can hardly think of a sphere

of judicial decision making in which appellate micromanagement has less to recommend it.").  Nonetheless, that is precisely what Defendant has attempted to do here.  The Court should not countenance this misbehavior.

For all of the reasons stated above, the judgment below should be affirmed and this Court should award fees to Plaintiffs' counsel for time incurred defending against this frivolous, duplicative appeal.  In the event this Court remands the case to the district court, the Ninth Circuit should order the district court to additionally consider Powell's bad faith in its fee calculations.

Dated: December 22, 2017       By: <u>s/ V. James DeSimone</u>
                                  V. James DeSimone
                                  Attorney for Plaintiffs-
                                  Appellees/Cross-Appellants

Dated: December 22, 2017       By: <u>s/ Michael D. Seplow</u>
                                  Michael D. Sepolw
                                  Attorney for Plaintiffs-
                                  Appellees/Cross-Appellants

**CERTIFICATE OF COMPLIANCE WITH CIRCUIT RULE 32**

I CERTIFY THAT PURSUANT TO Fed. R. App. R. 32 (a)(7)(C) and Ninth Circuit Rule 32-1, the attached opening brief is proportionately spaced and has a typeface of 14 point.

I further certify that this brief contains 14,270 words as calculated by Microsoft Word, excluding those parts exempted under Rule 32(f).

Dated: December 22, 2017

By:

s/ Michael D. Seplow
   Michael D. Seplow
   Attorney for Plaintiffs-
   Appellees/Cross-Appellants

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6., Plaintiffs are unaware of any related cases in this Court.

s/ Michael D. Seplow<br>
Michael D. Seplow

# CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2017, I filed the foregoing PLAINTIFFS-APPELLEES/CROSS-APPELLANTS' ANSWERING BRIEF AND OPENING BRIEF ON CROSS APPEAL with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the 9th Circuit electronic filing system ECF.

I hereby certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: December 22, 2017

BY:   s/ Michael D. Seplow
          Michael D. Seplow